**UNITED STATES of America, Plaintiff,**

v.

**VARIOUS ARTICLES OF OBSCENE MERCHANDISE, SCHEDULE NO. 896, Defendant.**

**No. 73 Civ. 1314.**

United States District Court, S. D. New York.

Aug. 17, 1973.

Paul J. Curran, U. S. Atty., S. D. N. Y., for plaintiff by A. W. Fargo, III, Asst. U. S. Atty., of counsel.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

The government seeks the forfeiture, confiscation and destruction of the contents of four envelopes sent into this district from foreign countries, on the grounds that such material is obscene and was thus unlawfully imported into this country under 19 U.S.C. § 1305. Section 1305 prohibits the importation of "any obscene book, pamphlet, paper, writing, advertisement, circular, print, picture, drawing or other representation . . . which is obscene or immoral . . . ." The statute further mandates that upon the discovery by the customs officials of allegedly obscene material, such material is to be seized and turned over to the United States Attorney who is to initiate court proceed-

ings seeking forfeiture, confiscation, and destruction of the material.

The crux of this case is whether the contents of four envelopes from Europe, which were opened by the customs officials here, should be destroyed pursuant to Section 1305. Envelopes one and two were both of letter size and contained illustrated advertising for films and magazines which could be obtained from Europe. Envelope three was somewhat larger than the standard letter size and contained two magazines, one of which was entitled "Group sex-Orgy". Envelope four was the largest of the seized envelopes and contained two illustrated pamphlets advertising the sale of "adult" films.

Though none of the addressees of the four envelopes has come forward to claim them or their contents, it remains this Court's duty to determine whether, in fact, the envelopes were properly opened by the Customs officials and, if so, whether the contents are obscene. Thus, on August 8, 1973, a trial was held in this case, at which time the government introduced its evidence. It is upon that evidence that this Court must rely in determining the issues presented.

The Supreme Court in United States v. 12 200-Ft. Reels of Super 8 mm Film, 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973), upheld the constitutionality of Section 1305 when applied to intercept and destroy obscene material privately imported for personal use.

I have no doubt that the material seized is obscene. In the Super 8 mm Film case, supra, the Supreme Court indicated that the term "obscene" as used in Section 1305 was limited to patently offensive representations or descriptions of that specific "hard core" conduct described in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). In Miller v. California, supra, the Supreme Court, seeking to delineate the types of material which could be prohibited by the states as obscene, listed the following categories of permissibly regulated material.

"(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

"(b) Patently offensive representation or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals."

93 S.Ct. at 2615.

The makers of the advertisements and magazines at issue here were able to depict in rather limited space a cornucopia of sexual activity. However, the ingenuity of the producers cannot immunize their material. There can be no doubt that these materials, judged by the contemporary standards of the community encompassing the Southern District of New York, taken as a whole, appeal to prurient sexual interest, portray sexual conduct in a patently offensive way, and taken as a whole have no serious literary, artistic, political or scientific value. In short, they are utterly and unquestionably obscene.

However, the question remains whether, in fact, the initial intrusion into the mail, i. e., the opening of the four envelopes by the Customs agents, was lawful. Each member of the Bureau of Customs is empowered by 19 U.S.C. § 482 "to search any trunk or envelope, wherever found, in which he may have a reasonable cause to suspect there is merchandise which was imported contrary to law . . ."[1]

It has long been held that the Fourth Amendment to the Constitution requires that a customs agent need only have "mere suspicion of possible illegal activity to justify a search at a border crossing or border[2] area." United States v. Glaziou, 402 F.2d 8 (2d Cir. 1968), cert. denied, 393 U.S. 1121, 89 S.Ct. 999, 22 L.Ed.2d 126 (1969); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Moreover, the requirement of 19 U.S.C. § 482 that an agent must have reasonable cause before undertaking a search has also been held by the Second Circuit in United States v. Doe, 472 F.2d 982 (2d Cir. 1973), a case dealing with mailed packages, to establish no higher standard than that required by the Fourth Amendment. Both Congress and the courts have sought not to prevent effective enforcement of the Customs laws by requiring too heavy a showing of suspicion on the part of the customs agent. This Court is keenly aware of the importance of the Customs laws and the laudatory job of enforcement achieved by the customs officials. However, the constraints placed on government intrusion into persons and their papers by the Fourth Amendment do apply to Customs searches. As the Second Circuit in United States v. Glaziou, *supra*, said, ". . . border stops and searches like all stops and searches by public officials are restricted by the requirement that they be reasonable." 402 F.2d at 12. Likewise, though the intrusion into an individual's privacy is not as personal nor as great when the search is of his papers, rather than of his person, such searches of one's mail by customs agents are also restricted by the requirement that they be reasonable.

Some courts have hinted that the standards may be different when dealing with a letter-sized envelope than

---

1. Regulations promulgated by the Treasury Department and the Postal Service authorize customs agents to examine all foreign mail, 39 C.F.R. § 61.6, and to seize envelopes containing prohibited material, 19 C. F.R. Part. 9. However, to determine when mail may be opened by the agents one must look to the statute and the Fourth Amendment.

2. In United States v. Sohnen, 298 F.Supp. 51 (E.D.N.Y.1969), Judge Weinstein in an exhaustive opinion held that a mail sorting room could be characterized as a "border area" for the purpose of applying the mere suspicion standard in evaluating a customs agent's search of mail. I agree. It seems clear that the mail room where a letter first arrives from a foreign country is identical to the border crossing point at which a person first enters this country, for the purposes of determining the scope of the Fourth Amendment's limitations on searches. United States v. Beckley, 335 F.2d 86 (6th Cir. 1964).

when it is a package with merchandise which is at issue. However, this Court feels that the same showing of suspicion based on reason necessary to justify an intrusion into a package is sufficient to warrant intrusion into a letter.

The issue thus becomes whether the government has proven that the customs agents had a suspicion based on reason when they opened the four envelopes.

■ This Court has no doubt that envelopes one, three and four on their face raise reasonable suspicions that they may contain merchandise, and not merely letters. Envelope number one, though of letter-size, evokes a reasonable suspicion that it is not merely a letter in that the addressee's name and address are affixed by a stencilled label, pasted on, of the kind which is commonly seen on periodicals. Envelope three is not only larger than a normal letter, but quite apparently from the touch contains commercial material and, in fact, has a commercial return address. The same indices of commercial use are apparent upon looking at envelope four. Thus the physical characteristics of these three envelopes clearly justify the intrusion by the customs agents.

■ Envelope two, however, raises more serious questions. There is nothing apparent from an examination of this letter-sized envelope which would raise one's suspicion that it in fact did not contain a letter. Nor did the testimony of Miss Suske, the supervisor of the New York customs agents, indicate a reason based on the expertise or experience of the customs officials which would have justified a reasonable suspicion. Her testimony was merely in the realm of speculation. If, for example, the customs officials knew from past experience that the addressee of envelope two had received obscene material in similar envelopes from the same country, then of course they could have opened the letter. The customs officials might also prove a suspicion based on reason if they were in receipt of a great number of identical letter-sized enve-

lopes where the addresses appeared to be by the same typewriter or by the same hand.

However, no evidence of this kind was adduced by the government. It is with reluctance that I must reject the seizure of this envelope and direct that it be sent to the addressee. The other three envelopes, however, were properly seized and clearly contain obscene material. The Court therefore directs their destruction.

So ordered.