UNITED STATES of America, Appellee,

v.

Robert Michael MILROY, Appellant.

No. 75–1675.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 14, 1975.

Decided March 2, 1976.

**1034**

Michael King, Hampton [court-appointed counsel], for appellant.

James A. Oast, Jr., Asst. U.S. Atty., Norfolk, Va. (William B. Cummings, U.S. Atty., Norfolk, Va., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, BUTZNER and WIDENER, Circuit Judges.

WIDENER, Circuit Judge:

The principal issue in this appeal is the validity of a search by a United States Customs official of five envelopes mailed into this country from an APO address in Thailand. The defendant, Robert Michael Milroy, unsuccessfully sought to suppress a quantity of heroin seized as a result of the warrantless search. Concluding that the customs search comported with constitutional standards and that defendant's other contentions are without merit, we affirm the conviction.

Milroy was tried before a jury, which found him guilty of five counts of importation of heroin in violation of 21 U.S.C. § 960(a)(1) and 21 U.S.C. § 952(a) and five counts of using the United States mail to facilitate the importation of heroin in violation of 21 U.S.C. § 843(b).

On December 5, 1974, United States Customs opener-verifier-packer James A. Deveau received at the Bureau of Customs in Oakland and San Francisco five first class envelopes which had been sent to him by the post office of an APO postal unit in

Thailand.[1] These envelopes had not been opened, and attached to each of them was a letter from the postal authorities stating that each envelope had been sniffed out by a specially-trained dog, which indicated that each contained narcotics. All of the envelopes had been deposited into the mail system in Thailand, at APO 96237, on the same day and were addressed to Milroy. By feeling the envelopes, Deveau determined that they contained more than letters. Deveau opened the envelopes and examined the contents. Each contained two packets of a white powdery substance which he field tested positive for opium alkaloid, of which heroin is a substance.

After notifying the Drug Enforcement Agency in San Francisco that contraband had been received, Deveau locked the envelopes with their contents in a rotary-locked postal bag so that any reopening would show up by an increase in the numerical indication. The postal bag was forwarded to Postal Inspector Roy Redmond, who is employed in the area of Langley Air Force Base, Virginia.

Inspector Redmond verified that the bag had not been opened. Special Agent Lawrence Scott of the Bureau of Narcotics and Dangerous Drugs assisted Inspector Redmond in opening the postal bag and envelopes. A field test of the contents indicated a derivative of opium.

After the powder was removed from the envelopes, one envelope was prepared for a controlled delivery. The contents were replaced with sugar and a very small amount of the heroin, and the inside of the envelope was dusted with a fluoroform powder. The envelope was placed in Milroy's post office box at Langley Air Force Base and was picked up with the other mail in the box.

Inspector Redmond, Agent Scott, an Air Force Sergeant, and an Air Force official went shortly thereafter to Milroy's room at Langley Air Force Base. Milroy was advised of the charge and of his rights under the *Miranda* decision and under the Code of Military Justice and signed a consent form for the search of his room. The envelope was found, but the contents could not be located. An ultraviolet light revealed fluorescent powder on Milroy's hands and desk.

During the continuing search for the contents of the envelope, Milroy grabbed Inspector Redmond's briefcase and a shopping bag containing the documentary evidence and fled. He was later apprehended, but the briefcase and its contents were not recovered, while the shopping bag was. The shopping bag contained the envelope which had been the subject of the controlled delivery, and the briefcase, the four other envelopes of which copies had been previously made. A handwriting expert testified that in his opinion the writing on the original envelope was Milroy's and that that on the others probably was. His lesser certainty about the other four stemmed from the fact that he had only seen copies, Milroy having stolen the originals.

The defendant's claim is simply that the letters were opened by the customs inspectors and searched without a search warrant. He points to the Fourth Amendment but not to 39 U.S.C. § 3623(d) as the basis for his claim, although in his reply brief he emphasizes the letters were entirely within the U.S. postal system, so the defense should be considered in the light of both, since the Fourth Amendment protects against unreasonable searches without a warrant, and the statute just mentioned protects certain mail of domestic origin against searches without a warrant. No claim is made that the search was not made in compliance with 19 U.S.C. § 482, which allows customs officers, among other things, to search any "envelope, wherever found, in which he may have a reasonable cause to suspect there is merchandise which was imported contrary to law." 39 U.S.C. § 3623(d) protects first class mail "of domestic origin" from search without a warrant, so one question here is whether the envelopes involved are "of domestic origin." We are of opinion they are not.

1. APO's are established by the Postmaster General under 39 U.S.C. § 705(d).

 The envelopes were mailed in Thailand from an APO. There can be no serious contention that just because mail is deposited in an APO, although in a foreign country, it is immune from customs inspection. 39 CFR § 61.1 provides that "all mail originating outside the customs territory of the United States is subject to customs examination," with certain exceptions not relevant here. Thailand is obviously outside the customs territory of the United States, and it follows that mail originating in Thailand is subject to customs examination, whether or not it is mailed at an APO. We think that for our purposes a definition holding that "domestic origin" does not include envelopes mailed in Thailand at an APO is consistent with ,the intent of the statute to protect the first class mail referred to in the statute from search without a warrant, but which would not do violence to the need of the nation to protect itself against smuggling and the like. See *Odland,* infra; *King,* infra; *Doe,* infra; *Sohnen,* infra. We are thus of opinion the envelopes were not protected from search without a warrant by 39 U.S.C. § 3623(d).[2]

The Supreme Court has recently affirmed the statement made in *Ex parte Jackson,* 96 U.S. [6 Otto] 727, 24 L.Ed. 877 (1878), that letter mail is free from inspection except in a manner consistent with the Fourth Amendment. *United States v. Van Leeuwen,* 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970). As the Sixth Circuit has observed, however, "Fourth Amendment standards applicable to mail moving entirely within the country are not applicable to mail matter coming in from outside the country at least where it appears that a customs determination must be made." *United States v. Beckley,* 335 F.2d 86, 88 (6th Cir. 1964), cert. den. sub nom. *Stone v. United States,* 380 U.S. 922, 85 S.Ct. 921, 13 L.Ed.2d 807 (1965).

While we have never considered the matter at hand, several courts have, under similar, if not precisely the same, facts, and have applied border search standards to mail coming into the United States from abroad. See, e. g., *United States v. King,* 517 F.2d 350 (5th Cir. 1975) (envelopes mailed from abroad with APO return address); *United States v. Odland,* 502 F.2d 148 (7th Cir. 1974), cert. den. 419 U.S. 1088, 95 S.Ct. 679 (1974) (first class mail sent to United States from Columbia); *United States v. Doe,* 472 F.2d 982 (2d Cir. 1973) (package mailed to United States from Columbia); *United States v. Beckley,* 335 F.2d 86 (6th Cir. 1964), cert. den. sub nom. *Stone v. United States,* 380 U.S. 922, 85 S.Ct. 921, 13 L.Ed.2d 807 (1965) (sealed parcel post package mailed in U.S. mail from Canal Zone to Detroit); *United States v. Various Articles of Obscene Merchandise, Schedule No. 896,* 363 F.Supp. 165 (S.D.N.Y.1973) (envelopes mailed to United States from Europe); *United States v. Sohnen,* 298 F.Supp. 51 (E.D.N.Y.1969) (package mailed to United States from Switzerland).

 Typically, the cases cite *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), as acknowledging a distinction between domestic and border searches by the use of this language:

"It would be intolerable and unreasonable if a prohibition agent were authorized to stop every automobile on the chance of finding liquor, and thus subject all persons lawfully using the highways to the inconvenience and indignity of such a search. Travelers may be so stopped [and searched without a warrant] in crossing an international boundary because of national self-protection reasonably requiring one entering the country to identify himself as entitled to come in, and his belongings as effects which may be law-

---

**2.** We have assumed the envelopes properly qualified as first class mail because the parties have throughout alluded to them that way. But an examination of the record makes it far from certain they contained anything other than the heroin packages. If they had no other contents, they were not first class mail under 39 U.S.C. § 4251(a) and are not protected from

search without a warrant under 39 U.S.C. § 3223(d). *United States v. Francis,* 487 F.2d 968 (5th Cir. 1973), cert. den. 416 U.S. 908, 94 S.Ct. 1615, 40 L.Ed.2d 113 (1974). Since *Jackson,* infra, 96 U.S. [6 Otto], at 733, refers to "such sealed packages," a discussion of the Fourth Amendment claim is nevertheless required.

fully brought in." 267 U.S. at 154, 45 S.Ct. at 285.

They variously decide that a border search may be undertaken without a warrant upon mere suspicion of irregularity; or the "reasonable cause to suspect" used in the statute (19 U.S.C. § 482); or the fact that the search is made at a border is itself reasonable under the Fourth Amendment. The Supreme Court does not seem to have passed upon the precise point, and we do not think it either necessary or appropriate that we do in this case. Whatever the standard may be, the synthesis of all the cases is that it is certain that what may be an unreasonable search in the interior of the country, and thus require a warrant, is not necessarily an unreasonable search at a border because of the need of the nation to protect its boundaries. And it is equally certain that every search to be reasonable at a border does not require a search warrant, especially where a customs determination is in order as it was here.

■ Applying the border search standard to the case at hand, whether it be a suspicion of the customs officials, or reasonable cause to suspect, or the mere fact that it was at a border, there has been no violation of this defendant's Fourth Amendment rights. Deveau knew that an especially trained dog had sniffed out these envelopes as ones containing narcotics; that each envelope felt to him like it contained more than a letter; and that they had all been mailed on the same day, to the same person, at the same address. Under any standard, the customs officials were entitled to open the envelopes without a search warrant, for the knowledge that Deveau had at the time made the search reasonable under the Fourth Amendment.

We have considered the other assignments of error concerning evidence to support the chain of custody and jury instructions and are of opinion they are without merit.

The judgment of the district court is accordingly

*AFFIRMED.*