750 F.2d 1197
 UNITED STATES of America
v.
Robert Ray GLASSER, Leonard Steven Gaza, Arthur Blair
Erdlen, Daniel Lee Tomko.
Appeal of Leonard Steven GAZA in No. 83-5909.
UNITED STATES of America
v.
Robert Ray GLASSER, Leonard Steven Gaza, Arthur Blair
Erdlen, Daniel Lee Tomko.
Appeal of Arthur Blair ERDLEN in No. 83-5929.
 Nos. 83-5909, 83-5929.
 United States Court of Appeals,
Third Circuit.
 Argued Aug. 13, 1984.
Decided Dec. 27, 1984.
Rehearing and Rehearing In Banc Denied in No. 83-5909, Jan. 22, 1985.
 
 G. William Bills, Jr. (argued), Pittsburgh, Pa., for appellant Leonard Steven Gaza in No. 83-5909.
 Stanton D. Levenson (argued), Pittsburgh, Pa., for appellant Arthur Blair Erdlen in No. 83-5929.
 J. Alan Johnson, U.S. Atty., Constance M. Bowden (argued), Asst. U.S. Atty., Thomas Lieber, Legal Intern, Paul J. Brysh, U.S. Atty.'s Office, Pittsburgh, Pa., for appellee.
 Before ALDISERT, Chief Judge, WEIS, Circuit Judge, and RE, Judge*.
 OPINION OF THE COURT
 RE, Chief Judge:
 
 
 1
 Appellants, Leonard Steven Gaza and Arthur Blair Erdlen, appeal from judgments of conviction entered against them on November 14, 1983, following a jury trial in the United States District Court for the Western District of Pennsylvania. Both appellants were convicted of conspiracy to import marijuana, in the form of hashish oil, in violation of 21 U.S.C. Sec. 963, unlawful importation of marijuana into the United States, in violation of 21 U.S.C. Sec. 952(a), and of using the United States mail to facilitate the importation of marijuana, in violation of 21 U.S.C. Sec. 843(b). Appellant Gaza was sentenced to two years imprisonment, and appellant Erdlen was sentenced to three years imprisonment and fined $10,000. Both appellants also received a special parole term of three years imposed pursuant to 21 U.S.C. Sec. 960(b)(1).
 
 
 2
 The appellants contend that the district judge erred in denying their pretrial motion to suppress evidence which, they allege, was illegally obtained. Initially, appellants argue that Customs was required to have "reasonable cause to suspect" a violation of the law before searching two packages mailed from Jamaica. In addition, appellant Gaza contends that the district judge improperly concluded that there was probable cause for his warrantless arrest. Appellant Gaza also contends that the district judge abused his discretion by summarizing the contentions of the parties in his instructions to the jury. Finally, appellants contend that, since the special parole provision, 21 U.S.C. Sec. 960(b)(1), neither designates a maximum term nor restricts a trial judge's power to punish parole violations, it is an unconstitutional denial of due process.
 
 
 3
 Since we find all contentions of appellants without merit, we affirm the judgments of conviction as well as the imposition of the special parole terms ordered by the district court.
 
 The Facts
 
 4
 On June 1, 1983, two packages containing carved wooden heads and other items arrived at the Miami, Florida post office from Jamaica. The packages were addressed to Robert Glasser and Daniel Tomko, both Pennsylvania residents. The return addresses indicated they were sent by a "Devon Reynolds" of Negril, Jamaica. Both packages were inspected by a mail technician in the United States Customs Service's Foreign Mail Division in Miami, Florida. The mail technician, as part of her inspection, opened the packages, removed the wooden heads and drilled a small hole in the back of each head. A black, oily substance, later determined to be hashish oil, was found inside. The local Drug Enforcement Administration (DEA) office in Miami was notified, took possession of the heads, and arranged for a controlled delivery of the packages with the aid of the Pittsburgh postal authorities. Pursuant to a court order, an electronic transmitter was installed inside the wooden heads so that DEA officials would be alerted when the heads were opened.
 
 
 5
 On June 14, 1983, the package addressed to Robert Glasser was delivered to his residence. At that time, DEA agents, with a warrant to search Glasser's home, were conducting surveillance of his home, but did not have a working receiver to detect the signal from the transmitter. Shortly after the package was delivered, appellant Gaza drove to Glasser's house in his van and went into the house. Approximately five minutes later, a DEA agent observed Gaza leaving Glasser's home with a brown package. Since the agent believed that Gaza was carrying the control package, he radioed another agent to intercept Gaza in Glasser's driveway. As the agent approached Gaza's van, he saw a brown bag on the front seat. Gaza was arrested as he attempted to drive away, and the brown bag which contained the carved wooden head was seized.
 
 
 6
 Later that morning, the second parcel was delivered to the residence of Daniel Tomko. Thereafter, DEA agents observed appellant Erdlen enter Tomko's residence. Approximately ten minutes later, Erdlen departed carrying a carved wooden head. A DEA agent prevented Erdlen from leaving in his car, arrested him, and seized the wooden head from the front seat of the car.
 
 
 7
 Four questions are presented on this appeal: 1) whether a Customs inspector must have "reasonable cause to suspect" a violation of the law in order to open a package entering the country through the mails; 2) whether the district court erred in not suppressing the evidence which had been seized as a result of appellant Gaza's warrantless arrest; 3) whether it was an abuse of discretion for the district judge to summarize the contentions of the parties in his instructions to the jury; and 4) whether the imposition of a special parole term, pursuant to 21 U.S.C. Sec. 960(b)(1), is an unconstitutional denial of due process.
 
 
 8
 We hold that the border search and the subsequent arrest of appellant Gaza were valid. Since we also hold that the summarizing of the contentions of the parties was not an abuse of discretion, and that 21 U.S.C. Sec. 960(b)(1) does not violate appellants' due process rights, we affirm.
 
 
 9
 As a preliminary matter, we note that there may be some question as to the standing of the appellants to challenge the search of the packages since neither package was addressed to or sent by either appellant. Compare United States v. Richards, 638 F.2d 765, 769-70 (5th Cir.), cert. denied, 454 U.S. 1097, 102 S.Ct. 669, 70 L.Ed.2d 638 (1981), with United States v. Watson, 551 F.Supp. 1123, 1127 (D.D.C.1982). This question, however, has not been raised by the Government, and, since we uphold the legality of the searches, we need not consider it. See United States v. Ramsey, 431 U.S. 606, 611 n. 7, 97 S.Ct. 1972, 1976 n. 7, 52 L.Ed.2d 617 (1977); United States v. Santana, 427 U.S. 38, 41 n. 2, 96 S.Ct. 2406, 2409 n. 2, 49 L.Ed.2d 300 (1976).
 
 Border Search of Mail and Packages
 
 10
 Initially, we must determine whether the Customs Service must have "reasonable cause to suspect" a violation of the law in order to open a package at a port of entry mailed into the United States from abroad. Since we have determined that, under the Constitution and the applicable statutes and regulations, Customs has the authority to search packages without articulating a "reasonable cause to suspect," we hold that the evidence obtained as a result of the search in Miami was properly admitted.
 
 
 11
 As a sovereign nation, "the United States is vested with all the powers of government necessary to maintain an effective control of international relations." United States v. Curtiss-Wright Export Corp., 299 U.S. 304, 318, 57 S.Ct. 216, 220, 81 L.Ed. 255 (1936) (quoting Burnet v. Brooks, 288 U.S. 378, 396, 53 S.Ct. 457, 461, 77 L.Ed. 844 (1933)). These powers of external sovereignty predate even the Constitution. They passed to the United States upon the cessation of the exercise of sovereignty by Great Britain. Curtiss-Wright Export Corp., supra, 299 U.S. at 316-17, 57 S.Ct. at 219-20. One of the inherent powers of a sovereign is the power to restrict or regulate the entry of persons and property across the border. Indeed, Congress is specifically authorized in the Constitution to regulate commerce with foreign nations. U.S. Const. art. I, Sec. 8, cl. 3.
 
 
 12
 It cannot be questioned that Congress has plenary power to police the borders of the United States. See, e.g., United States v. 12 200-Ft. Reels of Film, 413 U.S. 123, 126, 93 S.Ct. 2665, 2667, 37 L.Ed.2d 500 (1973); Weber v. Freed, 239 U.S. 325, 329, 36 S.Ct. 131, 132, 60 L.Ed. 308 (1915); Buttfield v. Stranahan, 192 U.S. 470, 492, 24 S.Ct. 349, 353, 48 L.Ed. 525 (1904). In the early days of the Republic, Chief Justice Marshall expounded the fundamental principle of territorial sovereignty: "The jurisdiction of the nation within its own territory is necessarily exclusive and absolute. It is susceptible of no limitation not imposed by itself." Schooner Exchange v. M'Faddon, 11 U.S. (7 Cranch) 116, 136, 3 L.Ed. 287 (1812). As an inherent right of sovereignty, the power to protect the border "is complete in itself, acknowledging no limitation other than those prescribed in the Constitution." Brolan v. United States, 236 U.S. 216, 218, 35 S.Ct. 285, 285, 59 L.Ed. 544 (1915) (quoting Buttfield, supra, 192 U.S. at 492, 24 S.Ct. at 353). As Chief Justice Burger emphasized in United States v. 12 200-Ft. Reels of Film, 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973), "[i]mport restrictions and searches of persons or packages at the national borders rest on different considerations and different rules of constitutional law from domestic regulations.... Historically such broad powers have been necessary to prevent smuggling and to prevent prohibited articles from entry." Id. at 125, 93 S.Ct. at 2667. See United States v. Ramsey, 431 U.S. 606, 619, 97 S.Ct. 1972, 1980, 52 L.Ed.2d 617 (1977); United States v. Thirty-seven Photographs, 402 U.S. 363, 376-77, 91 S.Ct. 1400, 1408-09, 28 L.Ed.2d 822 (1971).
 
 
 13
 It is also well established that searches of persons or property at the border are considered reasonable within the meaning of the Fourth Amendment simply by virtue of the fact that they occur at the border. As the Supreme Court stated in United States v. Ramsey, 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977),
 
 
 14
 Border searches, then, from before the adoption of the Fourth Amendment, have been considered to be "reasonable" by the single fact that the person or item in question had entered into our country from outside. There has never been any additional requirement that the reasonableness of a border search depended on the existence of probable cause. This longstanding recognition that searches at our borders without probable cause and without a warrant are nonetheless "reasonable" has a history as old as the Fourth Amendment itself.
 
 
 15
 Id. at 619, 97 S.Ct. at 1980 (footnote omitted) (emphasis added). The authority of Customs to search persons, baggage, and merchandise entering this country, the Court explained, is grounded in the "longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country." Id. at 616, 97 S.Ct. at 1978, see also Carroll v. United States, 267 U.S. 132, 154, 45 S.Ct. 280, 285, 69 L.Ed. 543 (1925) (dicta). Therefore, neither probable cause nor a warrant has ever been necessary to effect a search at the border.
 
 
 16
 In United States v. Scheer, 600 F.2d 5 (3d Cir.1979) (per curiam), this court reiterated the right of a customs officer to search baggage arriving by common carrier from abroad without articulating any reasonable cause for suspicion. Id. at 7. On a constitutional level, then, it is beyond question that agents of the federal government may, without cause, search persons and packages entering the country without violating the rights guaranteed by the Fourth Amendment. As in Ramsey, we need not decide when a border search may be deemed to be "unreasonable" because it was conducted in a particularly offensive or outrageous manner. Cf. Ramsey, supra, 431 U.S. at 618 n. 12, 97 S.Ct. at 1979 n. 12.
 
 
 17
 It may also be noted that the Universal Postal Union Convention, to which the United States adheres, clearly permits the signatory nations to control, according to their own domestic laws, importation through the mails. See Universal Postal Convention, done July 5, 1974, arts. 33 & 34, 27 U.S.T. 345, 393, T.I.A.S. No. 8231 (entered into force January 1, 1976). The Universal Postal Union acknowledges the principle that "there is no absolute inviolability of the secrecy of the mails, it is limited by considerations of security and national policy ...." Acts of the Universal Postal Union, revised at Ottowa (1957), reprinted in 9 M. Whiteman, Digest of International Law 1046 (1968).
 
 
 18
 Apparently acknowledging that the search of packages at the border is constitutionally permissible, the appellants argue that section 482 of Title 19 requires that all searches of incoming mail, whether letters or packages, be supported by reasonable cause. Section 482 in pertinent part provides that:
 
 
 19
 Any of the officers or persons authorized to board or search vessels may stop, search, and examine ... any vehicle, beast, or person, on which or whom they shall suspect there is merchandise which is subject to duty or shall have been introduced into the United States in any manner contrary to law ... and to search any trunk or envelope, wherever found, in which he may have reasonable cause to suspect there is merchandise which was imported contrary to law
 
 
 20
 ....
 
 
 21
 19 U.S.C. Sec. 482 (1982). This section, appellants contend, mandates that the customs regulations governing the inspection of mail be interpreted to permit the opening of packages only upon "reasonable cause to suspect" an importation contrary to law. This contention is based upon the assumption that Sec. 482 is the only basis for a search of incoming mailed packages at the border.
 
 
 22
 Customs' authority to conduct searches at the border, however, is not limited to section 482. Section 1582 of Title 19 also confers a broad authority to conduct discretionary searches at the border. Section 1582 in pertinent part provides that:
 
 
 23
 The Secretary of the Treasury may prescribe regulations for the search of persons and baggage and he is authorized to employ female inspectors for the examination and search of persons of their own sex; and all persons coming into the United States from foreign countries shall be liable to detention and search by authorized officers or agents of the Government under such regulations.
 
 
 24
 19 U.S.C. Sec. 1582 (1982).
 
 
 25
 In furtherance of this statutory mandate, the Secretary of the Treasury has promulgated certain regulations. Regulation 162.6 of title 19 of the Code of Federal Regulations provides that "[a]ll persons, baggage, and merchandise arriving in the Customs territory of the United States from places outside thereof are liable to inspection and search by a Customs officer." 19 C.F.R. Sec. 162.6 (1984) (emphasis added). Also relevant is article 145 of title 19 which contains regulations dealing specifically with mail importations. Regulation 145.2(b) in pertinent part provides:
 
 
 26
 All mail arriving from outside the Customs territory of the United States which is to be delivered within the Customs territory of the United States and all mail arriving from outside the U.S. Virgin Islands which is to be delivered within the U.S. Virgin Islands, is subject to Customs examination, except [certain governmental and diplomatic correspondence].
 
 
 27
 19 C.F.R. Sec. 145.2(b) (1984). Article 145 also contains more stringent regulations dealing with the opening of sealed letter class mail.
 
 
 28
 The appellants contend that the sole authority for the examination of mailed packages is 19 U.S.C. Sec. 482, and that, therefore, a reasonable cause to suspect is necessary to open any mailed package. Based on their assumption that section 482 is the sole statutory authority for article 145, appellants urge that these regulations necessarily incorporate a "reasonable cause to suspect" standard. In support of this argument, they rely on United States v. Ramsey, 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977) and DeVries v. Acree, 565 F.2d 577 (9th Cir.1977). This reliance is misplaced.
 
 
 29
 In United States v. Ramsey, 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977), the Supreme Court examined the statutory authority and constitutional validity of a border search by Customs of first-class letters. In Ramsey, a Customs inspector, while inspecting an incoming sack of mail, noticed eight similar envelopes from Thailand that were "rather bulky." Finding that the envelopes weighed considerably more than normal air-mail letters, he opened one and discovered a quantity of heroin. The other seven also proved to contain heroin. The defendants challenged the search, and the United States Court of Appeals for the District of Columbia Circuit held that probable cause was a necessary prerequisite to the search of the letters. 538 F.2d 415, 420 (D.C.Cir.1976). The Supreme Court reversed, holding that the search was authorized by section 482, and that the "reasonable cause to suspect" standard embodied in that section did not violate the Fourth Amendment. 431 U.S. at 617, 97 S.Ct. at 1979. Since the existence of reasonable cause to suspect was conceded, the Court expressly declined to decide whether some other statutory grant of authority, such as section 1582, would also have upheld the search. Id. at 615 n. 10, 97 S.Ct. at 1978 n. 10.
 
 
 30
 In DeVries v. Acree, 565 F.2d 577 (9th Cir.1977), two American citizens, whose first class letters from abroad had been opened without cause, brought an action against the Customs Service seeking injunctive relief and a declaratory judgment that the inspections were illegal. The United States Court of Appeals for the Ninth Circuit held for the plaintiffs, concluding that section 482 precluded the opening and search of first-class letters from abroad absent a showing of reasonable cause to suspect that the letters contained contraband or merchandise. Id. at 579.
 
 
 31
 It must be noted that neither Ramsey nor DeVries discussed the applicability of section 1582 to the search of mailed packages. All the courts of appeals that have considered the entry of packages have held that, without articulating a reasonable suspicion, Customs may search packages mailed to the United States from abroad pursuant to the authority of section 1582. See United States v. Pringle, 576 F.2d 1114, 1116 (5th Cir.1978); United States v. Emery, 541 F.2d 887, 889 (1st Cir.1976); United States v. Odland, 502 F.2d 148, 150 (7th Cir.), cert. denied, 419 U.S. 1088, 95 S.Ct. 679, 42 L.Ed.2d 680 (1974). Several other courts of appeals have held that foreign letter-class mail may also be examined at the border, without either a warrant or probable cause. United States v. Milroy, 538 F.2d 1033, 1036-37 (4th Cir.), cert. denied, 426 U.S. 924, 96 S.Ct. 2633, 49 L.Ed.2d 378 (1976); United States v. King, 517 F.2d 350, 352-53 (5th Cir.1975), cert. denied sub nom., 446 U.S. 966, 100 S.Ct. 2943, 64 L.Ed.2d 825 (1980); United States v. Bolin, 514 F.2d 554, 557 (7th Cir.1975). But see DeVries v. Acree, 565 F.2d 577, 579 (9th Cir.1977).
 
 
 32
 At issue in this case are the searches of packages, not letters. In United States v. Odland, 502 F.2d 148 (7th Cir.), cert. denied, 419 U.S. 1088, 95 S.Ct. 679, 42 L.Ed.2d 680 (1974), the United States Court of Appeals for the Seventh Circuit upheld the authority of Customs to conduct random searches of international mail articles at the border. The court held that section 482 was not the exclusive grant of statutory authority available to Customs. Specifically, the court held that section 1582 and 19 C.F.R. Sec. 162.6 empowered Customs to open an "envelope as part of its continuing investigation of narcotics smuggled from foreign countries into the United States." Id. at 150.
 
 
 33
 In United States v. Emery, 541 F.2d 887 (1st Cir.1976), Customs agents in Miami searched two packages addressed to a Massachusetts resident, which had a return address of Coli, Colombia. Each package contained a sound speaker and a substance subsequently identified as cocaine. The defendant Emery moved to suppress the contents of the package, contending that the search would have been proper only if Customs had "reasonable grounds to suspect" that merchandise was being imported contrary to law. The district court held that the search was valid since the Government is free "to spot-check incoming mail" at the point of entry. The Court of Appeals for the First Circuit affirmed, and stated that "[w]e agree with the holding in Odland at least insofar as it concerns packages as opposed to first class letters." Id. at 889.
 
 
 34
 Similarly, in United States v. Pringle, 576 F.2d 1114 (5th Cir.1978), a mail search was held to be authorized under section 1582. In Pringle, a customs mail specialist in New York opened a package sent from Thailand. The court concluded that since the search was authorized by section 1582 and regulation 145.2, it was not necessary to decide whether reasonable cause to suspect existed.
 
 
 35
 In order to understand the relationship between section 482 and section 1582, an understanding of their history is essential. Section 1582 directs the Secretary of the Treasury to prescribe regulations for the search of persons and baggage coming into the United States. 19 U.S.C. Sec. 1582. These regulations implement section 1581 which authorizes the search of vessels or vehicles without cause. 19 U.S.C. Sec. 1581(a). Section 1581 was originally enacted as section 2 of Chapter 201, 39th Cong., 1st Sess., 14 Stat. 178 (1866) (codified at Rev.Stat. Sec. 3059). Section 482 was originally enacted as section 3 of that same act. Id. Sec. 3 (codified at Rev.Stat. Sec. 3061). By section 2, the forerunner of section 1581, an inspector was authorized to board a vessel and "inspect, search, and examine the same, and any person, trunk or envelope on board ...." Section 2, Chapter 201, 39th Cong., 1st Sess., 14 Stat. 178 (1866). Reasonable cause was not a prerequisite to this search. Section 3, on the other hand, authorized an inspector "to search any trunk or envelope, wherever found, in which he may have a reasonable cause to suspect there is merchandise which was imported contrary to law; ...." Id. Sec. 3 (emphasis added). This portion of the statute has not been amended since its original enactment.
 
 
 36
 As indicated in the dissent in DeVries v. Acree, section 2 of the 1866 Act, now section 1581, permitted searches without reasonable suspicion as the "statutory and historical equivalent of today's border search." 565 F.2d 577, 580 (Kilkenny, J., dissenting). Section 3 of the original act, now section 482, served a different purpose. As this court stated in United States v. Scheer, 600 F.2d 5 (3d Cir.1979), section 482 (originally section 3) "permits customs officials to search persons, vehicles, and packages even at some distance from the border when they have 'reasonable cause to suspect that there is merchandise which was imported contrary to law.' " 600 F.2d at 6 (emphasis added). This interpretation is clearly consistent with Congress' use of the phrase, "wherever found" and the use of the past tense in "merchandise which was imported contrary to law," as well as the requirement of "reasonable suspicion." See DeVries, 565 F.2d at 580-81 (Kilkenny, J., dissenting). Thus, we agree with the conclusion that "the general border search statute is 19 U.S.C. Sec. 1581 and that 19 U.S.C. Sec. 482 is a more specialized statutory provision designed to combat smuggled goods already introduced into the United States." Id. at 581; see also United States v. King, 517 F.2d 350, 353-54 (5th Cir.1975), cert. denied sub nom., 446 U.S. 966, 100 S.Ct. 2943, 64 L.Ed.2d 825 (1980).
 
 
 37
 The broad statutory grant of authority in section 1582 is clearly sufficient to uphold the customs regulations permitting the search of packages without cause. Furthermore, as the foregoing discussion reveals, there is no indication in the statutes or the Constitution that packages mailed across the border should be treated any differently than packages brought across the border by hand. In Ramsey, the Supreme Court reiterated in emphatic terms the principle that the mode of entry into the country is not constitutionally significant:
 
 
 38
 Surely no different constitutional standard should apply simply because the envelopes were mailed, not carried. The critical fact is that the envelopes cross the border and enter this country, not that they are brought in by one mode of transportation rather than another. It is the entry into this country, from without it that makes a resulting search "reasonable".
 
 
 39
 * * *
 
 
 40
 Condemning the unsoundness of any distinction between entry by mail and entry by other means, Mr. Justice Miller, on behalf of a unanimous Court wrote ... "Of what avail would it be that every passenger, citizen and foreigner, without distinction of country or sex, is compelled to sign a declaration before landing, either that his trunks and satchels in hand contain nothing liable to duty, or if they do, to state what it is, and even the person may be subjected to a rigid examination, if the mail is to be left unwatched, and all its sealed contents, even after delivery to the person to whom addressed, are to be exempt from seizure, though laces, jewels, and other dutiable matter of great value may thus be introduced from foreign countries."
 
 
 41
 431 U.S. at 620-21, 97 S.Ct. at 1980-81 (quoting Cotzhausen v. Nazro, 107 U.S. 215, 218, 2 S.Ct. 503, 504, 27 L.Ed. 540 (1883)).
 
 
 42
 Other important constitutional concerns that may be raised by the random search of first-class letters without any suspicion that they contain other than correspondence are not presented in this case. Indeed, in response to Ramsey, the Commissioner of Customs promulgated new regulations relating to sealed letter class mail. See 42 Fed.Reg. 38,393 (1977); 19 C.F.R. Sec. 145.3 (1984). These regulations, and the accompanying "Policy Statement" and "Appendix," prohibit the opening of sealed letter class mail without "reasonable cause to suspect the presence of merchandise or contraband." 19 C.F.R. Sec. 145.3(a). The reading of correspondence or the opening of sealed letter class mail, which appears to contain only correspondence, without consent or a search warrant is prohibited. 19 C.F.R. Sec. 145.3(b), (c). While the regulations are not a model of clarity, they nonetheless reveal the intention of the Commissioner to search and inspect without cause, any mail other than sealed letter class mail. Id. Sec. 145.2. Sealed letter class mail reasonably suspected of containing merchandise or contraband, i.e., any package, may also be searched at will. Id. Sec. 145.3(a). Sealed letter class mail that contains only correspondence is afforded greater protection. Id. Sec. 145.3(b).
 
 
 43
 At issue here is the search of two packages: one, approximately 7 inches by 13 inches by 13 inches, and the other, approximately 6 inches by 6 inches by 12 inches. Both packages bore declaration forms stating that they contained carved wooden heads and other items. On the facts presented, we hold that the search of these packages was valid pursuant to section 1582 of Title 19, and 19 C.F.R. Sec. 145.2 and 19 C.F.R. Sec. 162.6.
 
 Search of Appellant Gaza
 
 44
 Appellant Gaza contends that his warrantless arrest by DEA agents was not supported by probable cause, and that, therefore, the district court erred in denying his motion to suppress the evidence seized.
 
 
 45
 It is well established that probable cause for a warrantless arrest exists when, at the time of the arrest, the facts and circumstances within the officer's knowledge are "sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). In Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court adopted a "totality of the circumstances" approach to evaluating whether probable cause exists for the issuance of a search warrant. 103 S.Ct. at 2328-29. In Gates, the Court identified a "common sense" aspect to the issue of probable cause, stating that it is a "fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily or even usefully reduced to a neat set of legal rules." Id. at 2328. The determination that probable cause exists for a warrantless arrest is fundamentally a factual analysis that must be performed by the officers at the scene. It is the function of the court to determine whether the objective facts available to the officers at the time of arrest were sufficient to justify a reasonable belief that an offense was being committed. See Beck, 379 U.S. at 96, 85 S.Ct. at 228.
 
 
 46
 In support of his contention that probable cause did not exist for his arrest, Gaza cites Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959), for the proposition that "every man who carries a package [is not] subject to arrest nor the package subject to seizure. The police must have reasonable grounds to believe the particular package ... [contains] contraband." Id. at 104, 80 S.Ct. at 172. He also argues that his position is supported by Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), in which the Court struck down the conviction which was based on evidence seized in a warrantless search of a defendant. Since the search was based solely on the fact that the defendant had been observed conversing with a number of known narcotics addicts over an eight hour period, the Court found the evidence obtained in the search inadmissible. Id. at 62, 88 S.Ct. at 1902. Significantly, the Court noted that the arresting officer had seen nothing pass between the defendant and the addicts. Id.
 
 
 47
 In this case, the DEA agents knew that the package was part of a controlled delivery, and that it contained contraband. The agents were also aware, based on their experience, that it is common practice for drug smugglers to have a package delivered to someone other than the ultimate recipient in an effort to avoid detection. Indeed, the agents kept the house under surveillance in the expectation that someone might come to pick up the package. A little more than an hour after the package was delivered, Gaza appeared at Glasser's home. He entered the home empty-handed. He left the house five to ten minutes later carrying what appeared to be a "brown package." Although, in fact, Gaza carried the wooden head in a brown bag, not in the original control package as the DEA agent mistakenly believed, this understandable error does not negate the objective facts giving rise to probable cause. Obviously, Gaza had taken something from the house. In light of the proximity in time with the delivery of the hashish oil and the brevity of his stay in the house, there was a very strong probability that he was leaving with the hashish oil. The size, shape and appearance of the brown bag, factors specifically mentioned by the Henry Court, 361 U.S. at 104, 80 S.Ct. at 172, were clearly consistent with the belief that it contained the wooden head. While there existed at the time some theoretical possibility that Gaza was retrieving some other innocent item in a brown bag from the Glasser residence, the probable cause standard "does not deal with hard certainties, but with probabilities." Gates, 103 S.Ct. at 2328 (quoting United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). Under the totality of the circumstances presented in this case, we hold that the DEA agents had sufficient objective facts to find probable cause that Gaza was committing an offense, and they were therefore justified in arresting him. Since there was probable cause to arrest Gaza, the seizure of the brown bag containing hashish oil was valid as the result of a search incident to a lawful arrest.
 
 Summarizing the Contentions of the Parties
 
 48
 Appellant Gaza also contends that the district judge abused his discretion in summarizing the contentions of the parties in his instructions to the jury. Specifically, Gaza argues that since he did not present any evidence at the trial, it was improper for the district judge to summarize the contentions of the parties.
 
 
 49
 It is true that "extensive comment" on the evidence should be avoided. See United States v. Cahalane, 560 F.2d 601, 607 (3d Cir.1977), cert. denied, 434 U.S. 1045, 98 S.Ct. 890, 54 L.Ed.2d 796 (1978). Nevertheless, it is within the sound discretion of the trial judge to review the evidence, and comment on the legal theory of the parties. See United States v. Levy, 578 F.2d 896, 902 (2d Cir.1978); United States v. Gaines, 450 F.2d 186, 189 (3d Cir.1971), cert. denied, 405 U.S. 927, 92 S.Ct. 978, 30 L.Ed.2d 801 (1972).
 
 
 50
 In the present case, appellant Gaza does not allege, nor is there any indication in the record, that the district judge commented extensively on the evidence. The district judge, by simply and briefly summarizing the contentions of the parties, did not prejudice any of Gaza's rights. Indeed, Gaza was acquitted of the charge of possession of hashish oil with intent to distribute. Therefore, since the district judge neither transgressed the permissible bounds of comment, nor prejudiced any of appellant Gaza's rights, we hold that the district judge did not abuse his discretion in summarizing the contentions of the parties.
 
 
 51
 Constitutionality of 21 U.S.C. Sec. 960(b)(1)
 
 
 52
 The final contention of appellants Gaza and Erdlen is that 21 U.S.C. Sec. 960(b)(1), upon which the district court relied in imposing upon appellants a special parole term of three years, is an unconstitutional denial of due process.
 
 
 53
 The appellants perceive two flaws in the statute. First, section 960(b)(1) does not expressly designate a maximum parole term. Second, they contend that the statute does not limit the sentencing judge's discretion in imposing sanctions for a violation of the parole. We find these arguments without merit.
 
 21 U.S.C. Sec. 960(b)(1) provides:
 
 54
 If a sentence under this paragraph provides for imprisonment, the sentence shall include a special parole term of not less than three years in addition to such term of imprisonment.
 
 
 55
 21 U.S.C. Sec. 960(b)(1) (1982).
 
 
 56
 This court upheld a substantially similar special parole provision, 21 U.S.C. Sec. 841(b), in United States v. Walden, 578 F.2d 966, 972 (3d Cir.1978), cert. denied, 444 U.S. 849, 100 S.Ct. 99, 62 L.Ed.2d 64 (1979). Our reasoning in that case controls our interpretation of this statute as well. We find that 21 U.S.C. Sec. 960(b)(1) fixes a maximum special parole term of lifetime parole. The fact that the statute does not expressly specify a maximum term violates neither the Fifth nor the Eighth Amendment. See, e.g., United States v. Rich, 518 F.2d 980, 987 (8th Cir.1975), cert. denied, 427 U.S. 907, 96 S.Ct. 3193, 49 L.Ed.2d 1200 (1976). The district court imposed on these defendants the minimum special parole term permissible under the statute, three years. We perceive no constitutional infirmity in the sentences imposed.
 
 
 57
 As to the assertion that the district court has unconstitutionally limitless discretion in imposing sanctions for a parole violation, we find that 21 U.S.C. Sec. 960(c) provides clear direction to the trial judge in punishing violations of the special parole. Section 960(c) expressly provides that if the terms and conditions of the special parole are violated, the parole may be revoked and the original term of imprisonment shall be increased by the period of the special parole term. 21 U.S.C. Sec. 960(c). The violator may be required to serve all or part of the new term. Id. Thus, at the time of sentencing, the defendant receives clear notice of the maximum penalty for violation of parole: it is the full term of the special parole, in this case three years. See United States v. Lockley, 590 F.Supp. 1215, 1217 (N.D.Ga.1984) (interpreting 21 U.S.C., Sec. 841); United States v. Davi, 588 F.Supp. 91, 91 (E.D.N.Y.1984) (same). But see United States v. Tehba, 578 F.Supp. 1398, 1400 (N.D.Cal.1984), appeal docketed, No. 84-1029 (9th Cir. Feb. 9, 1984). Thus, we hold the special parole terms imposed by the district court were entirely within constitutional limits. See United States v. Martinez, 481 F.2d 214, 221 (5th Cir.), cert. denied, 415 U.S. 931, 94 S.Ct. 1444, 39 L.Ed.2d 489 (1973).Conclusion
 
 
 58
 In view of the foregoing, it is the holding of this Court that: (1) the border search of the packages mailed from Jamaica was authorized by 19 U.S.C. Sec. 1582; (2) appellant Gaza's arrest was based on probable cause, and the district judge correctly denied his motion to suppress; (3) the district judge, in his instructions to the jury, did not abuse his discretion in summarizing the contentions of the parties; and (4) the imposition of a special parole term, pursuant to 21 U.S.C. Sec. 960(b)(1), was not an unconstitutional denial of due process. Finding no error, we will affirm the judgments of conviction.
 
 
 
 *
 The Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation