**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3346
_____

UNITED STATES OF AMERICA

v.

HAKEEM BROWN,
                              Appellant
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Crim. No. 1:12-cr-00023-001)
District Judge: Honorable Gregory M. Sleet
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 20, 2014
_____

Before: CHAGARES, GREENAWAY, JR., and VANASKIE, *Circuit Judges*.

(Opinion Filed:  May 2, 2014)
_____

OPINION
_____

VANASKIE, *Circuit Judge*.

        Appellant Hakeem Brown entered a conditional plea of guilty to possession of

heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and possession of a

firearm after having been convicted of a crime punishable by imprisonment for a term

exceeding one year, in violation of 18 U.S.C. § 922(g)(1).  Under the terms of the plea, Brown reserved the right to appeal the District Court's denial of his motion to suppress. For the reasons discussed below, we will affirm the District Court's denial of Brown's motion.

I.

Because we write primarily for the parties, we will recount only the facts essential to our discussion.

On February 24, 2012, Officer Robert Fox of the Wilmington Police Department received information from a confidential informant that a person known as "Hakeem" was "frequently armed and would have a firearm when he is driving . . . ."  (App. 78.) The informant described "Hakeem" as a bearded black male, approximately 5'9" and 190 pounds, who customarily drove a dark blue sport-utility vehicle with "rims."  (App. 39.) Based on this information, another officer displayed a photo of a suspect to the informant, and the informant identified that person as the brother of "Hakeem."  From this the officers surmised that "Hakeem" might be defendant Hakeem Brown, who also appeared in the police database.  Officer Fox displayed a picture of Brown to the informant, who confirmed that Brown was the person he had been describing.  A criminal history check of Brown revealed that he had been previously convicted of a felony.

That same afternoon, Officer Fox arranged for the informant, who at the time was under arrest at the Wilmington police station, to place a series of cell phone calls to

2

Brown. During the ensuing calls, which were played aloud "on speakerphone" and monitored by at least two officers on each occasion, (App. 40), Brown and the informant discussed an apparently prearranged plan to conduct a "home invasion" together later that evening, (App. 41). The two agreed that they would meet beforehand near the intersection of Lower Oak and Brown Streets in Wilmington.

As the hour of the planned gathering approached, Officer Fox instructed the informant to find out, using "street terminology," if Brown would be bringing a firearm. (App. 83.) During the next call, the informant asked Brown if he "had his jawn," to which Brown responded that he was en route and that "he did have it." (App. 46.) Later, when Brown called the informant to confirm that he was in the vicinity of their meeting point, the informant asked Brown if he was "strapped," to which Brown responded affirmatively. (App. 48.) Officer Fox testified that both carrying a "jawn" and being "strapped" were references to possession of a firearm. (App. 46, 48.)

As these calls took place, Detective Steven Barnes and other members of the Wilmington Police Department established surveillance positions near the intersection of Lower Oak and Brown Streets. Shortly after the final call between Brown and the informant, Barnes observed a dark blue Suburban with rims approach the meeting location and secure a nearby parking spot. Several police vehicles moved in to block the Suburban's exit. Barnes, on foot, approached the driver's-side door of the Suburban with his weapon drawn. After confirming that Brown's hands were visible and empty, Barnes

3

holstered his weapon, removed Brown from the driver's seat, and handcuffed him.

Detective Barnes initially performed a limited pat down of Brown's waist area for weapons, but found nothing. A moment later he moved Brown a short distance from the vehicle and conducted a second, more thorough frisk, which revealed a quantity of heroin secreted inside one of Brown's pockets. Other officers then transported Brown to the Wilmington Police Department. Brown's vehicle, too, was taken to the station, where it was searched by Officer Fox and others. They recovered a loaded handgun and additional ammunition from hidden compartments inside the vehicle, and a black ski mask from the back seat. While processing Brown's arrest at the station, officers found an additional four bags of heroin on his person. Brown later made incriminating statements to police while being interviewed after his arrest.

On April 12, 2012, Brown was indicted by a federal grand jury for one count each of (1) interference with commerce by threats or violence, in violation of 18 U.S.C. § 1951; (2) possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(i); (3) possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); and (4) possession of a firearm after having been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1). Brown moved to suppress the evidence recovered from his person and his vehicle, as well as his later statements to police. On September 11, 2012, the District Court held an evidentiary hearing, after which it denied Brown's

motion to suppress in a detailed written opinion filed January 8, 2013.

On April 8, 2013, Brown entered a conditional plea of guilty under Rule 11(a)(2) to possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm after having been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1). On July 8, 2013, the District Court imposed a sentence of 60 months' imprisonment, 6 years of supervised release, and a $200 special assessment. Judgment was entered on July 15, 2013. Brown filed a timely notice of appeal.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. We exercise *de novo* review over the District Court's legal determinations as to probable cause, but review underlying factual findings only for clear error. *Ornelas v. United States*, 517 U.S. 690, 699 (1996).

## III.

Brown's sole argument on appeal is that the police, upon discovering that Brown did not have a firearm on his person, lacked probable cause to arrest him, and thus also lacked authority to search his nearby vehicle incident to arrest. To conduct a warrantless arrest, police must have probable cause, which exists "whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by

5

the person being arrested." *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). We assess the existence of probable cause from the perspective of an objective law enforcement officer considering the totality of the circumstances. *Id.* (quoting *United States v. Glasser*, 750 F.2d 1197, 1206 (3d Cir. 1984)). Under the "collective knowledge" doctrine, information known to any one investigating officer is imputed to the officers actually conducting the arrest. *See United States v. Whitfield*, 634 F.3d 741, 745 (3d Cir. 2010).

The District Court here found that probable cause to arrest Brown for unlawful possession of a firearm rested upon several factors: "the officers' knowledge that Brown was a convicted felon, the informant's visual identification of 'Hakeem' as Brown, Brown's statements to the informant indicating that he had a handgun, his appearance at the planned meeting location, and the informant's accurate description of Brown's vehicle . . . ." (App. 15–16.) And because the police had reasonable cause to believe that Brown's vehicle contained "evidence of the offense of arrest," *i.e.*, a firearm, the District Court concluded that they were permitted to search that vehicle incident to Brown's arrest. (App. 18 (quoting *Arizona v. Gant*, 556 U.S. 332, 351 (2009)).)

We agree with the District Court's conclusions. This case involved a day-long investigation in which Officer Fox and others gleaned information about unlawful possession of a firearm from an in-custody informant. They listened in as the informant, under their supervision, repeatedly called Brown, his cohort, and discussed an upcoming

6

home invasion.  The informant identified Brown from a photograph, which allowed police to verify that Brown had a felony record and would be committing a crime if he in fact was in possession of a firearm.  The informant then twice obtained unequivocal confirmation from Brown that he had brought a firearm with him en route to their meeting point.  All that remained was for the police surveillance team to verify Brown's arrival at the meeting point in the vehicle described by the informant, which occurred precisely as scheduled.

We conclude that the police had probable cause to arrest Brown upon his arrival at the meeting point.  Although the Wilmington police may have had ample reason to distrust the informant, a recent arrestee with no track record of reliability, the monitored phone calls confirmed that the planned home invasion was no mere fiction created by the informant to curry favor with law enforcement.  Brown's subsequent arrival in the correct vehicle at the prearranged time and place reinforced that conclusion.  In sum, the totality of the circumstances available to the police at the time of Brown's arrival justified an objectively reasonable belief that Brown was committing the offense of unlawful possession of a firearm.

Brown makes much of the fact that Detective Barnes' frisk of Brown's person revealed no firearm.  This, according to Brown, exposed the informant's forecast as unfounded.  Brown likens this case to *Myers*, in which we concluded that a police officer, responding to a domestic dispute involving an armed male, lacked probable cause to

7

arrest the defendant where no firearm was immediately visible and no other crime had occurred in the officer's presence. 308 F.3d at 261–62. He also analogizes the facts to *Johnson v. Campbell*, 332 F.3d 199 (3d Cir. 2003), in which we found no reasonable suspicion to justify an investigative stop where a motel clerk reported that the defendant was acting suspiciously, but the police, upon approach, observed nothing unusual.

This case bears not even passing similarity to *Myers* or *Johnson*. The police here acted on a tip from an informant that the defendant was in unlawful possession of a firearm. The tip was powerfully corroborated by monitored phone conversations and accurate predictive content. And perhaps most importantly for purposes of responding to Brown's argument, the tipster did not predict that the gun would be found in Brown's waistband—rather, the information provided was only that Brown, who was traveling in a vehicle, "had" the gun as he traveled to the planned meeting. (App. 46.) Thus, it was of limited significance that Detective Barnes' frisk of Brown's person revealed no weapons. The investigating officers retained an objectively reasonable belief that the contraband at issue would be found in Brown's vehicle, which they were authorized to search incident to arrest. *See Gant*, 556 U.S. at 351.

To recap, the simple fact of Brown's on-schedule arrival at the launching point of an intended home invasion, taken in light of the foregoing conversations overheard by police and Brown's status as a convicted felon, provided the police with probable cause to arrest Brown for a violation of § 922(g). Even after the pat down, the police remained

8

justified in arresting Brown and searching, incident to arrest, the vehicle from which he had just been removed.  Accordingly, the District Court was correct in denying the motion to suppress.

## IV.

For the aforementioned reasons, we will affirm the District Court's judgment of conviction entered July 15, 2013.