565 F.2d 577
 J. H. DeVRIES and Peter R. Beyerinck, Plaintiffs-Appellants,
v.
Vernon D. ACREE, Commissioner of Customs, William E. Simon,
Secretary of the Treasury, and U. S. Customs
Service, Defendants-Appellees.
 No. 76-3238.
 United States Court of Appeals,
Ninth Circuit.
 Nov. 30, 1977.
 
 Robert C. Vanderet (argued), Donald M. Wessling, Merrick J. Bobb, Kenneth M. Glazier and Fred Okrand, on the brief, Los Angeles, Cal., for plaintiffs-appellants.
 Dzintra I. Janavs, Asst. U. S. Atty. (argued), William D. Keller, U.S. Atty., and Frederick M. Brosio, Jr., Asst. U.S. Atty., on the brief, Los Angeles, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before HUFSTEDLER and KILKENNY, Circuit Judges, and GRANT,* District Judge.
 HUFSTEDLER, Circuit Judge:
 
 
 1
 The Government successfully contended in the district court that customs officers are statutorily and constitutionally entitled to open and to search first class letters from abroad without notice to or consent of the addressees and without any cause to suspect that such letters contain either contraband or dutiable merchandise. The sweeping power over international letter mail that United States v. Ramsey (1977), 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 617 said was not asserted by the Government in that case is sought here. If the Government's argument were sustained, every piece of first class letters from abroad addressed to any person or corporation in the United States could be opened and searched by customs officers at will or whim. We reject the Government's contentions on statutory grounds without reaching the constitutional issues engendered by its claims.
 
 
 2
 The appellants are naturalized American citizens who emigrated from Holland. Their complaint averred that customs officers opened and searched three described first class letters from named relatives in Holland, without appellants' prior knowledge or consent, without any cause to suspect that the letters contained dutiable merchandise or contraband, and without probable cause or a warrant. They sought a declaration that the officers' conduct was in violation of statutory law (19 U.S.C. § 482) and of their rights secured by the First and Fourth Amendments, and they prayed for an injunction to prevent customs officers from repeating their illegal acts.
 
 
 3
 The Government moved to dismiss the complaint on the ground that no claim for relief had been or could be stated on the facts alleged, the truth of which was admitted for the purpose of the motion. Relying on United States v. Barclift (9th Cir. 1975) 514 F.2d 1073, and United States v. Odland (7th Cir. 1974) 502 F.2d 148, the district court granted the motion. The district court held that "the mere fact that it (first class mail) comes into the United States from outside the country is enough to warrant its opening. If some type of reasonable suspicion is required, it is automatically and invariably supplied by the mere fact of entry of the letter into the United States."
 
 
 4
 Although the district court recognized that 19 U.S.C. § 482 required that customs searches be supported by reasonable cause to suspect that the letters contained contraband or dutiable merchandise, it concluded that the search was authorized by "19 U.S.C. § 1582, which has in it no such requirement in its language or in the regulations promulgated thereto, 19 C.F.R. 145.2."
 
 
 5
 The district court was misled by some language in United States v. Barclift, supra, and by its erroneous assumption that 19 C.F.R. § 145.2 was a regulation implementing 19 U.S.C. § 1582.
 
 
 6
 Section 145.2 is a regulation implementing 19 U.S.C. § 482, as the Supreme Court points out in United States v. Ramsey, supra, 431 U.S. at 612 n. 8, 97 S.Ct. 1972. The regulation thus necessarily incorporates the " 'reasonable cause to suspect' test adopted by the statute." (Id. at 612, 97 S.Ct. at 1977).
 
 
 7
 This unlimited search was not authorized by 19 U.S.C. § 1582. Section 1582 states that the "Secretary of the Treasury may prescribe regulations for the search of persons and baggage and he is authorized to employ female inspectors for the examination and search of persons of their own sex; and all persons coming into the United States from foreign countries shall be liable to detention and search by authorized officers or agents of the Government under such regulations." Nothing in either the language or the legislative history suggests that this statute was related to searches of international mail.
 
 
 8
 The district court's reliance on Section 1582 was apparently engendered by the statement in United States v. Barclift, supra, 514 F.2d at 1074: "No meaningful distinction . . . can be drawn between the entry of mail into the United States and the entry of automobiles or baggage." Using that comment, the district court assumed that the reference to "baggage" in Section 1582 was interchangeable with the word "envelope" in Section 482, and that the lack of statutory limitations on searching baggage applied also to opening and searching mail as it crossed the border.
 
 
 9
 The interchangeability assumption confuses the statutory issues with the constitutional issues. The fact that two different statutes granting two different kinds of authority to customs agents may both be constitutional does not mean that both statutes mean the same thing or that the lack of limitations on authority conferred by one statute can repeal or override the limitations on authority imposed by the second statute.
 
 
 10
 Barclift did not consider or discuss any issue of statutory construction. It cited neither 19 U.S.C. § 482 nor 19 U.S.C. § 1582. Indeed, as far as the opinion reveals, the panel was unaware that 19 C.F.R. § 145.2 was a creature of 19 U.S.C. § 482, thus incorporating the reasonable cause to suspect test in § 145.2. For the purpose of deciding whether the district court correctly denied the appellants' motion to suppress evidence which had its source in an "examination" at the border of some envelopes addressed to a third person from a sender in Bogota, Colombia, Barclift assumed that no limitations had been statutorily imposed upon the customs officers' search of the envelopes.[1] In short, the sole issue discussed in Barclift was the validity of Section 145.2 (unmoored from 19 U.S.C. § 482) against Fourth Amendment attack. Because we do not reach either the First or the Fourth Amendment issues in this case, we have no occasion to reconsider the Barclift rationale in the light of United States v. Ramsey, supra, 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 617.[2]
 
 
 11
 The judgment below cannot stand because, entirely apart from any constitutional question, appellants have alleged that the opening and searching of their letters was in violation of 19 U.S.C. § 482, in that the officers acted without reasonable cause to suspect that the letters contained contraband or dutiable merchandise. (United States v. Ramsey, supra, 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 617.
 
 
 12
 REVERSED.
 
 KILKENNY, Circuit Judge, dissenting:
 
 13
 Because I believe the majority relies on the wrong statute and that 19 C.F.R. §§ 145.1 and 145.2 were promulgated to implement the provisions of 19 U.S.C. § 1581, rather than 19 U.S.C. § 482, I dissent.
 
 DISCUSSION OF STATUTES
 
 14
 A proper analysis of the history of the two statutes is crucial to a sound disposition of this case. The parents of both statutes were initially enacted as §§ 2 and 3 of Chapter 201, 39th Congress, Session 1, 1866, 14 Stat. 178. The forerunner of 19 U.S.C. § 1582, authorizing the promulgation of regulations to implement the two sections was part and parcel of the same legislation.
 
 
 15
 Of controlling importance is the fact that § 2 of the 1866 law, the parent of 19 U.S.C. § 1581, authorized the Customs officers, and other authorized agents of the Treasury Department, " . . . to go on board of any vessel, as well without as within his district, and to inspect, search, and examine the same, and any person, trunk or envelope on board, and to this end to hail and stop such vessel if under way, and to use all necessary force to compel compliance . . . ." (Emphasis supplied).
 
 
 16
 Section 3 of the law of 1866, and its progeny 19 U.S.C. § 482, on which the majority relies for its view that 19 C.F.R. § 145.2 is limited to the provisions of § 482 is by its specific language limited to search by an officer of goods, wares, or merchandise which have been introduced into the United States in a manner contrary to law and additionally " . . . to search any trunk or envelope, wherever found, in which he may have a reasonable cause to suspect there are goods which were imported contrary to law; . . . " (Emphasis supplied). Manifestly, this language speaks in the past tense and applies only to trunks or envelopes which have already been introduced into the United States. The section has absolutely nothing to do with inspections or searches at the border or with opening letters at the border.
 
 
 17
 In other words, § 2 of the 1866 law, now 19 U.S.C. § 1581, was enacted to permit inspections and searches at the border, while § 3, now 19 U.S.C. § 482, was enacted to permit inspection and search where the officers had reasonable cause to suspect that the goods had been imported contrary to law.
 
 
 18
 The fact that § 2 of the 1866 legislation did not mention vehicles is quite understandable. At that time there were few, if any, highways or roadways entering the United States from foreign countries and, for that matter, even trains of foreign origin were probably quite uncommon. Most, if not all, foreign commerce, with the exception of smuggled goods from Canada, entered by way of ocean going ships.
 
 
 19
 Section 2 of the initial law, the parent of § 1581 permitted searches on board the vessels without reasonable suspicion, which I deem the statutory and historical equivalent of today's border search. This section was revised by Section 581, Chapter 356, 67th Congress, Sess. II, 1922, 42 Stat. 979. To eliminate the words "or envelope" and substitute the words "or package", and to include "or vehicle", in addition to "any vessel". Section 582 of the same legislation, now 19 U.S.C. § 1582, authorized the Secretary of the Treasury to prescribe regulations for the search of persons and baggage mentioned in the previous section. In neither section is there a requirement that the officers have "reasonable cause to suspect" the unlawful importation of the "package". The language of § 582 of the 1922 revision authorizing the Secretary of the Treasury to prescribe regulations for the search of persons and baggage is precisely the same as, and the parent of, 19 U.S.C. § 1582.
 
 
 20
 In relevant part, the 1922 revision has been carried forward through the enactment of June 17, 1930, 46 Stat. 747, to the present statute, 19 U.S.C. § 1581. The language was not changed by the enactment of August 5, 1935, 49 Stat. 521, the 1946 Reorganization Plan No. 3, 60 Stat. 1097, or the Act of September 1, 1954, 68 Stat. 1141.
 
 
 21
 The language of § 582 of the 1930 legislation, 46 Stat. 748, now 19 U.S.C. § 1582, authorizing the promulgation of regulations by the Secretary of the Treasury has not been changed since that date. It was then, as it was in the 1922 enactment, part and parcel of the legislation which sanctioned inspections and searches at the border. Clearly, this statute was entirely unrelated to 19 U.S.C. § 482, the statute on which the majority relies.
 
 
 22
 It is manifest that the Congress by the enactment of §§ 2 and 3 of the 1866 legislation and the 1922 and 1930 revisions intended that each section was to apply to a separate and distinct subject. Statutes are to be given, wherever possible, such effect that no clause, sentence or word is rendered superfluous, void, contradictory or insignificant. Ruiz v. Morton, 462 F.2d 818 (CA9 1972), aff'd, 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974). Interpretations that would nullify a statutory provision or render it superfluous are and should be disfavored. Patagonia Corp. v. Board of Governors of the Federal Reserve System, 517 F.2d 803 (CA9 1975). In other words, all provisions of a statute are intended to have meaning and are to be given effect. The identical rule is stated in United States v. Menasche, 348 U.S. 528, 75 S.Ct. 513, 99 L.Ed. 615 (1955). See also, N. L. R. B. v. Lion Oil Co., 352 U.S. 282, 77 S.Ct. 330, 1 L.Ed.2d 331 (1957); F.P.C. v. Panhandle Eastern Pipe Line Co., 337 U.S. 498, 69 S.Ct. 1251, 93 L.Ed. 1499 (1949). There is absolutely no way a court can give effect to each of these sections and their revisions and not conclude that § 2 was intended to apply aboard ships and vehicles at the border only, while § 3 was designed to apply to goods after they had entered the country either from foreign ships or across our borders from Mexico or Canada. One of the stated objects of the 1866 Act was to prevent smuggling, especially from Canada along the Canadian and Northwestern frontier. Clearly, § 3 of the Act applied to the situation where the smugglers would cross the United States border at places other than ports of entry and possess contraband at the time of apprehension. The contraband was in the United States and doubtless that is the reason for the use of the past tense in § 3 and the requirement of "reasonable cause to suspect" before a search could be made.
 
 
 23
 The reasons for the enactment of the two sections in the first instance are well articulated in Carroll v. United States, 267 U.S. 132, 154, 45 S.Ct. 280, 285, 69 L.Ed. 543 (1925), where it said: "Travelers may be so stopped in crossing an international boundary because of national self protection reasonably requiring one entering the country to identify himself as entitled to come in, and his belongings as effects which may be lawfully brought in. But those lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search . . . ."[1]
 
 
 24
 From this analysis of the controlling statutes, it seems quite clear that the general border search statute is 19 U.S.C. § 1581 and that 19 U.S.C. § 482 is a more specialized statutory provision designed to combat smuggled goods already introduced into the United States. Moreover, general mail inspection regulations established by the Secretary of the Treasury must be presumed to be promulgated under the general border search statute. This conclusion is eminently reasonable in light of the absence of any requirement of reasonableness in either the statute or the concomitant regulation. Although this conclusion is contrary to certain footnotes in United States v. Ramsey, 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977), the author of that opinion overlooked the history and significance of 19 U.S.C. § 1581 and the statutory authority for the regulations at issue in 19 U.S.C. § 1582. Indeed, the Supreme Court admitted in Ramsey, supra, at n. 10 that it did not decide whether the search would have been authorized under some other statutory grant of authority including 19 U.S.C. § 1582.
 
 
 25
 In addition to all the legislative history, the Secretary's own regulations are probably the most revealing evidence to support the analysis that 19 C.F.R. §§ 145.1 and 145.2 were promulgated pursuant to 19 U.S.C. § 1581, rather than 19 U.S.C. § 482. The regulations define "package" and while § 1581 speaks of package, it is a glaring fact that § 482 does not. Obviously, the Secretary would not be defining a word which is absent from the very statute which the regulation was designed to clarify. Moreover, it seems crystal clear that the Secretary would have injected in the regulations a provision requiring "reasonable cause to suspect" before opening packages if he had been acting under § 482.
 
 
 26
 In promulgating the regulations, the Secretary defined a "package", necessarily as used in the statute, § 1581, to mean ". . . any parcel, packet, envelope, or other similar container, whether sealed or unsealed, arriving in the international mail." (19 C.F.R. § 145.1(c)). Section 145.2 of the same regulations authorized examination by the Customs agents of all mail originating outside the customs territory of the United States.
 
 
 27
 It is a well recognized rule of law that a regulation should not be disregarded or annulled unless, in the judgment of the court, it is plainly and palpably inconsistent with law. Boske v. Comingore, 177 U.S. 459, 470, 20 S.Ct. 701, 44 L.Ed. 846 (1900). To the same effect, see Ramirez v. I&NS, 550 F.2d 560, 564 (CA9 1977); Soriano v. United States, 494 F.2d 681, 683-84 (CA9 1974), and United States v. Boyd, 491 F.2d 1163, 1167 (CA9 1973).
 
 
 28
 One of the most compelling reasons for opening mail at the border is the possibility that an ordinary envelope weighing an ounce or less would be used for the importation of drugs or other costly products which are easily concealed. If the power to inspect commonplace letters of international origin is removed, we can expect a monumental flood through the mails of illegal drugs. A very minimal amount of heroin can have substantial value. As recently as United States v. Valdovinos, 558 F.2d 531, 534-5 (CA9 1977), we upheld the conviction of a defendant for possessing 4.31 grams of 12% purity heroin. Even at 12% purity that weight of heroin had a street value of between $700.00 and $900.00. From this, we can assume that one gram of pure heroin might have a value of in excess of $2,000.00. We are now speaking of only one-sixteenth of an ounce. Manifestly, this could be concealed in a run-of-the-mill envelope without noticeable bulkiness or anything to suggest a reasonable suspicion of contraband. Consequently, I would hold that the bulky envelope in Ramsey had nothing to do with the ultimate decision and that "reasonable cause to suspect", if required, is supplied by the mere fact that the envelope is of foreign origin.
 
 
 29
 True enough, some of my conclusions are at variance with what was said by the majority in Ramsey in a few of its footnotes. This is explained by the fact that the majority in Ramsey was addressing itself to what appeared to be an alternate statute.
 
 THE CONSTITUTIONAL CHALLENGES
 
 30
 Inasmuch as the relevant statute and the regulations promulgated thereunder permitted the opening of the letters here under scrutiny, I am required to answer the First and Fourth Amendment constitutional challenges.
 
 
 31
 Although the letters there involved were bulky and gave rise to "reasonable cause to suspect", I would hold that United States v. Ramsey, supra, controls and that the discussion of the First and Fourth Amendment problems in that case are fully applicable to the facts before us.
 
 
 32
 There can be no doubt but that the analysis at pages 9 through the first full paragraph on page 16 (431 U.S. pp. 616 - 623, 97 S.Ct. pp. 1979-1982) disposes of the Fourth Amendment challenge. True enough, the Supreme Court, for some unstated reasons, referred to searches made where "reasonable cause to suspect" existed. Nonetheless, time after time, the majority opinion makes it clear that the mere entry into this country from without makes a resulting search "reasonable". Sl.Op. 13 (431 U.S. 619, 97 S.Ct. 1980). Moreover, the majority holds that there is no distinction whatsoever between envelopes carried on the person and envelopes entering the country by mail. I quote from page 13 (431 U.S. at page 620, 97 S.Ct. at page 1981): "The critical fact is that the envelopes cross the border and enter this country, not that they are brought in by one mode of transportation rather than another." "The historically recognized scope of the border search doctrine, suggests no distinction in constitutional doctrine stemming from the mode of transportation across our borders." Sl.Op. at 14 (431 U.S. at page 621, 97 S.Ct. at page 1981). Again at page 16, slip sheet (431 U.S. at page 622, 97 S.Ct. at page 1982), "In view of the wealth of authority establishing the border search as 'reasonable' within the Fourth Amendment even though there be neither probable cause nor a warrant, we reject the distinctions made by the Court of Appeals in its opinion."
 
 
 33
 Additionally, I would hold that Ramsey, the analysis on pages 16, 17 and 18 of the slip sheet (431 U.S. pp. 623 - 625, 97 S.Ct. pp. 1982, 1983), disposes of the First Amendment constitutional challenge. There the Court emphasizes that the existing system of border searches has not been shown to invade protected First Amendment rights. The Court on page 16 (431 U.S. at page 623, 97 S.Ct. at page 1982) emphasizes that the applicable postal regulation, 19 C.F.R. 145.3 (1976) prohibits Customs officers or employees from reading, or authorizing any other person to read any correspondence contained in sealed mail of foreign origin unless a search warrant has been obtained in advance. The Court refused to consider the constitutional reach of the First Amendment in the absence of existing statutory and regulatory protection. To be sure, the Court said that envelopes were opened at the border only when the Customs officers have reason to believe they contain other than correspondence and held they had no occasion to decide whether in the absence of the regulatory restrictions that speech would be chilled. Nonetheless, the Court emphasized language taken from Wolff v. McDonnell, 418 U.S. 539, 576, 94 S.Ct. 2963, 2984, 41 L.Ed.2d 935, (1974), that " . . . freedom from censorship is not equivalent to freedom from inspection or perusal." Here, of course, we have the regulation prohibiting the reading of the enclosures.
 
 CONCLUSION
 
 34
 I would affirm the judgment of the district court.
 
 
 
 *
 Honorable Robert A. Grant, Senior United States District Judge, Northern District of Indiana, sitting by designation
 
 
 [1]
 From the brief treatment of the Fourth Amendment issue in the Barclift per curiam opinion, one cannot ascertain whether the envelopes in fact were opened or searched, or whether the customs officers did or did not have reasonable cause to suspect that the envelopes contained contraband
 
 
 [2]
 We also have no reason to discuss United States v. Odland (7th Cir. 1974) 502 F.2d 148, on which the district court also relied. Odland, of course, does not bind us. Of greater moment, however, its analysis is similar to Barclift in a similar factual context
 
 
 [1]
 This language from Carroll is quoted with approval in Almeida-Sanchez v. United States, 413 U.S. 266, 272, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), where the Court went on to say:
 "Whatever the permissible scope of intrusiveness of a routine border search might be, searches of this kind may in certain circumstances take place not only at the border itself, but at its functional equivalents as well. . . . For another example, a search of the passengers and cargo of an airplane arriving at a St. Louis airport after a nonstop flight from Mexico City would clearly be the functional equivalent of a border search." Id. at 272-73, 93 S.Ct. at 2539.
 Consequently, here the Los Angeles Customs area at the airport, where the letters were opened, was the functional equivalent of the border.
 The most recent Ninth Circuit case holding that the mere crossing of the border is sufficient cause for a search and that even "mere suspicion" is not required is United States v. Wilmot, 563 F.2d 1298 (1977).