**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Karl August MOST,**
**Defendant-Appellant.**

**No. 85–5177.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 4, 1986.

Decided May 20, 1986.

Patrick O'Toole, Asst. U.S. Atty., argued, Peter K. Nunez, U.S. Atty., Patrick K. O'Toole, Asst. U.S. Atty., on the brief, San Diego, Cal., for plaintiff-appellee.

Merle N. Schneidewind, San Diego, Cal., for defendant-appellant.

Before PREGERSON, POOLE, and THOMPSON, Circuit Judges.

POOLE, Circuit Judge:

Appellant Karl August Most appeals his conviction for conspiracy to import heroin and importation of heroin in violation of 21 U.S.C. §§ 952, 960, and 963, conspiracy to possess heroin with the intent to distribute, and two counts of possession of heroin with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), and 846. Appellant contends that the district court erred in denying his motions to suppress all evidence flowing from a Customs mail search of a package containing heroin and certain incriminating statements he made to DEA agents. We affirm.

## I.

In November 1984, a package arrived from Thailand at the United States Customs Mail Facility in Oakland. The package was labeled by Thailand Customs officials as containing a blowfish paperweight and weighing 11–12 pounds. An Oakland Customs technician opened the package, drilled into the base of the paperweight and discovered heroin. The Drug Enforcement Agency was notified of the discovery. Pursuant to the DEA's request, the heroin was left inside, and after the base had been repaired, the package was sent on to the Postal Inspection Division in San Diego. There, the DEA applied for a search warrant with respect to the package and for permission to install an electronic transmitter. Although both the DEA agent's affidavit as well as the cover sheet for the affidavit specifically referred to the electronic beeper, the actual search warrant issued did not.

After the search warrant was issued, agents removed most of the heroin from the package, installed an electronic device, and forwarded the package to its destination address, a private mail service in San Diego. Here, agents observed Most leave the mail service with the package and join co-defendant Naslund and Most's girlfriend, Jackie Hale, in a car. The agents attempted to follow the car, but lost visual contact for about 10 minutes, during which time an increase in frequency of the signals emitted by the electronic device indicated that the package was being opened. After some 15 minutes, agents once again spotted the car and observed Most driving at high speed and turning frequently. They arrested Most and Naslund at approximately 3:30 p.m.

Upon arrest, Most was advised of his Constitutional rights and a short time later requested to speak to an attorney. Hale was advised of her Constitutional rights and volunteered to take the agents to a house on Jessie Street where Most had taken the paperweight. Most and the remaining agents arrived at this location (4–5 blocks away) shortly thereafter.

At the Jessie Street residence, one of the agents saw the blowfish paperweight in the backyard. Most asked another agent how Hale was. He told the agent that Hale did not know anything about what was going on, and asked what would happen to them.

The agent who had found the paperweight walked back to where Most was being held. According to his testimony at the suppression hearing, Most asked him "What's going on?" The agent replied that they had found the paperweight and were going to search the house for the beeper and the heroin sample. Most then admitted to the agent that he had thrown the beeper in the backyard and said he

would show the agent where. Most asked again what would happen to Hale and the agent responded that he did not know. Approximately one and a half hours after arriving at the Jessie Street residence, Most was taken to the DEA station where he gave a statement regarding the paperweight. He asked again what would happen to Hale and was told that it was unclear whether or not she would go to jail. At the station, Most consented to a search of his safe located back at the Jessie Street residence. There, agents discovered approximately 166.5 grams of heroin.

At around 7:00 or 8:00 p.m., Most was taken to the Metropolitan Correctional Center (MCC). At no time other than shortly after being advised of his rights did Most request to speak with an attorney.

## II.

Most claims that installation of the monitoring device was illegal because it was not specifically provided for in the search warrant.

We have previously held that the warrantless insertion of electronic devices pursuant to a lawful Customs search does not violate the Fourth Amendment. *United States v. Bernard*, 625 F.2d 854, 860 (9th Cir.1980) (relying on *United States v. Dubrofsky*, 581 F.2d 208, 211 (9th Cir.1978)). Therefore, we look to see whether the Customs agents in Oakland complied with statutory and constitutional requirements for opening a package to determine whether they could insert a beeper.

■ Inspection of mail from abroad is a border search for which neither a search warrant nor probable cause is required. *United States v. Ramsey*, 431 U.S. 606, 619–23, 97 S.Ct. 1972, 1980–82, 52 L.Ed.2d 617 (1977); *see United States v. Whiting*, 781 F.2d 692, 695 (9th Cir.1986); *United States v. Alfonso*, 759 F.2d 728, 733 (9th Cir.1985). Such searches are considered reasonable under the Fourth Amendment simply by virtue of the fact that they occur at the border. As the Supreme Court stated in *Ramsey*, "[t]his longstanding recognition that searches at our borders without

probable cause and without a warrant are nonetheless 'reasonable' has a history as old as the Fourth Amendment itself." 431 U.S. at 619, 97 S.Ct. at 1980. Therefore, the opening of the package by the customs officer without a search warrant was constitutionally permissible.

Title 19 U.S.C. § 482, provides in part as follows:

**Section 482, Search of Vehicles and Persons**

Any of the officers or persons authorized to board or search vessels may stop, search and examine * * * any vehicle, beast, or person, on which or whom they shall suspect there is merchandise which is subject to duty or shall have been introduced into the United States in any manner contrary to law * * * and to search any trunk or envelope, wherever found in which he may have reasonable cause to suspect there is merchandise which was imported contrary to law * *.

Most contends that the constitutional power to open and search incoming packages and letter mail from abroad is limited by the provisions of the foregoing section. He further argues that the Customs technician did not have reasonable cause to suspect a violation of law when he opened the package.

The government claims that 19 U.S.C. § 1581, not § 482, governs the search in this case. Section 1581(a) provides in part: "Any officer of the customs may at any time go on board of any vessel or vehicle at any place in the United States * * * and examine, inspect, and search the vessel or vehicle and * * * any person, trunk, or package, or cargo on board * * *." The broad language of this statute authorizes customs searches without probable cause or even mere suspicion. *United States v. Dobson*, 781 F.2d 1374, 1376 (9th Cir.1986). The government contends that § 1581 is the general border search statute and distinguishes § 482 as a more specialized statutory provision applicable to mailed articles which have already entered the United

States. *See United States v. Glasser,* 750 F.2d 1197, 1204 (3d Cir.1984); *DeVries v. Acree,* 565 F.2d 577, 581 (9th Cir.1977) (Kilkenny, J., dissenting).

The government further contends that 19 U.S.C. § 1582, which authorizes the Secretary of Treasury to prescribe regulations for the search of persons and baggage, was enacted in order to implement both § 1581 and § 482. *See Glasser,* 750 F.2d at 1204. Pursuant to this authorization, the Secretary has promulgated certain regulations. Regulation 145.2 of title 19 of the Code of Federal Regulations, which both parties agree governed the search of the package in this case, deals specifically with mail importations and provides that all mail, except certain governmental and diplomatic correspondence, arriving into the United States or the Virgin Islands from places outside thereof is subject to Customs examination. Because this regulation applies to mail as it enters the United States and is not restricted to items having previously crossed the border, the government argues that the regulation implements § 1581. *Id. Contra DeVries,* 565 F.2d at 578. Consequently, since § 1581 contains no "reasonable cause to suspect" standard, the government contends that Customs officials were permitted to open the package without cause.

■ We decline to decide whether 19 U.S.C. § 482 limits the government's power to inspect incoming packages and letter mail from abroad, and we further decline to resolve what appears to be the statutory conflict between §§ 482 and 1581, because we agree with the district court that the Customs technician had reasonable cause to suspect that the package contained contraband when it arrived at the Customs mail facility in Oakland, and thus the resulting search satisfied the "reasonable cause to suspect" standard of § 482. *United States v. Ramsey,* 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977).

The presence of reasonable cause is a mixed question of law and fact, and therefore reviewable *de novo. United States v. McConney,* 728 F.2d 1195, 1202 (9th Cir.) (en banc), *cert. denied,* — U.S. —, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). *See United States v. Cardona,* 769 F.2d 625, 628 (9th Cir.1985).

■ The test for "reasonable cause to suspect" or "reasonable suspicion" has been applied in a number of contexts when law enforcement officials must make a limited intrusion on less than probable cause. *United States v. Montoya De Hernandez,* — U.S. —, 105 S.Ct. 3304, 3311, 87 L.Ed.2d 381 (1985). This test is milder than that of "probable cause" imposed by the Fourth Amendment as a requirement for the issuance of warrants. *Ramsey,* 431 U.S. at 612–13, 97 S.Ct. at 1976–77; *Dubrofsky,* 581 F.2d at 211. To justify a search under § 482 on the basis of reasonable suspicion, an official must be aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the package contains illegal material. *See United States v. Brignoni-Ponce,* 422 U.S. 873, 884, 95 S.Ct. 2574, 2581, 45 L.Ed.2d 607 (1975). In passing on the legality of such a search, we must consider all the surrounding circumstances. *See New Jersey v. T.L.O.,* 469 U.S. 325, 105 S.Ct. 733, 743–44, 83 L.Ed.2d 720 (1985).

In *United States v. Ramsey,* 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977), the Supreme Court examined the reasonable cause requirement in the context of a border search of first-class letters. There, the Customs agent opened letters from Thailand, a known heroin source, which were bulky and weighed considerably more than normal air-mail letters. The Court stated that "[u]nder these circumstances, we have no doubt that [the agent] had reasonable 'cause to suspect' that there was * * * contraband in the envelopes." *Id.* at 614, 97 S.Ct. at 1978.

This court has also addressed the presence of reasonable cause in searches of international mail. In *United States v. Dubrofsky,* 581 F.2d 208 (9th Cir.1978), we held that origination of a package in a source country for drugs provided reasonable cause to suspect the presence of contraband. *Id.* at 211 (Since "[s]ubstantial

quantities of narcotics are imported into the United States from Thailand, * * * it is reasonable to suspect that a crated package * * * contains contraband.").

In the instant case, the Customs Agent based his decision to open the package on his knowledge that the package was coming from a source country for drugs (Thailand); his observance that the label described an unusually cheap article; and the inference that the package contained "something extra" because it weighed more than expected for the labeled description. We find that these specific and articulable facts support the conclusion that the agent had "reasonable cause to suspect" that the package contained contraband when he opened it.

■ Since Customs lawfully opened the package, the installation of the beeper device did not violate the Fourth Amendment. Thus, we affirm the district court's order denying Most's motion to suppress.

### III.

Most argues that subsequent to his request to speak to an attorney, DEA agents continued to interrogate him in violation of *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). He contends that as a result of this questioning he made incriminating statements admitting to disposing the beeper at the Jessie Street residence. In *Edwards,* the Supreme Court held that once an accused has invoked his Fifth Amendment right to have counsel present during custodial interrogation, he is not subject to further interrogation by the authorities unless the accused himself initiates further communication, exchanges, or conversations with the police. *Id.* at 484–85, 101 S.Ct. at 1884–85.

■ Most argues that the agents continued to interrogate him after he requested counsel. He claims that the events surrounding his arrest constituted psychological pressure and were equivalent to "interrogation" within the meaning of *Miranda.* We find this argument to be meritless. Neither his detainment at the Jessie Street residence, his witnessing the interrogation of his girlfriend, nor the elapsed time between his arrest and transport to MCC, alone or in combination, constituted "functional interrogation." *See United States v. Thierman,* 678 F.2d 1331, 1332–36 (9th Cir. 1982) (no "functional interrogation" when police admitted that suspect, who was held five hours, was told in attempt to elicit a response that police would question his girlfriend and family).

■ Most also argues that he never reopened conversation with the agents and that his statements were made in response to continued questioning. The district court concluded that it was Most who initiated the conversation that led to his incriminating statements. We review this factual finding under the "clearly erroneous" standard. *McConney,* 728 F.2d at 1202.

Most relies on responses by a DEA agent on cross examination and a statement in the DEA's Investigation Report to support his contention that the agents continued to interrogate him after he requested counsel. On cross examination, a DEA agent stated that he did ask Most questions after Most requested counsel, and that some statements made by Most were in response to inquiries made by the agent. Defense counsel's questions that elicited these responses, however, were ambiguous as to content, time and place. Moreover, the trial judge specifically questioned the agent about who had initiated the conversation at the Jessie Street residence. The agent stated that Most had initiated the conversation. Finally, the statement in the Investigation Report that an agent approached Most and asked him directly about the beeper and the heroin sample, was directly refuted in that agent's subsequent affidavit as an error in the report.

Implicit in the district judge's denial of the suppression motion was a finding that he believed the agent's direct testimony that Most initiated the conversation. We hold that the trial court's findings are supported by the testimony and are not clearly erroneous. *United States v. Barrett,* 703 F.2d 1076, 1087 (9th Cir.1983).

However, the fact that Most initiated conversation with the agents does not end our inquiry. Most's waiver of his Fifth Amendment right to counsel was valid only if it was knowing and intelligent. *See Smith v. Illinois,* 469 U.S. 91, 105 S.Ct. 490, 493, 83 L.Ed.2d 488 (1984). In making this determination, we must examine the totality of circumstances, including Most's "background, experience, and conduct," *see Oregon v. Bradshaw,* 462 U.S. 1039, 1046, 103 S.Ct. 2830, 2835, 77 L.Ed.2d 405 (1983), and the necessary fact that Most reopened the conversation that led to his incriminating statements. *See Edwards,* 451 U.S. at 486 n. 9, 101 S.Ct. at 1885 n. 9.

Initially we note that the trial judge did not specifically make a finding of waiver. When the court does not enter a specific finding of fact or conclusion of law, we will uphold the result if there is a reasonable view of the evidence to support it. *United States v. Lee,* 699 F.2d 466, 468 (9th Cir. 1982).

A reasonable view of the evidence here is that Most made a knowing and intelligent waiver of his right to counsel based on his own assessment of the quantity of evidence against him. He had been apprehended after a car chase with $18,631.00 and a false passport in his car, and $2,631.00 in his pocket. He knew that the paperweight had been monitored, and probably knew that he had been observed picking it up at the private mail service. He also knew that Hale had taken agents to the Jessie Street residence where he had thrown the paperweight. Based on this knowledge, Most could have easily concluded that cooperation with the agents by confessing was a better strategy than to hold out in the face of so much evidence against him.

Therefore, we hold that the "totality of circumstances"—the events surrounding Most's arrest, the quantity of evidence against him, the fact that Most, not the police, initiated the dialogue leading to his incrimination, and the absence in the record of any force or coercion directed against him—reasonably supports a finding that Most validly waived his Fifth Amendment right to counsel.

AFFIRMED.