UNITED STATES of America,
Plaintiff–Appellant,

v.

Kamyar TAGHIZADEH,
Defendant–Appellee.

No. 92–50518.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 2, 1993.

Decided March 28, 1994.

George S. Cardona, Asst. U.S. Atty., Robert T. Scott, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellant U.S.

Alan Rubin, Epstein, Adelson, Rubin & Belter, Los Angeles, CA, for defendant-appellee Kamyar Taghizadeh.

Before: BRUNETTI, KOZINSKI, and BOGGS,* Circuit Judges.

KOZINSKI, Circuit Judge.

We must decide whether customs officials violated 19 U.S.C. § 482 by improperly searching international mail.

I

This case is about a package which turned out to contain opium.  Customs officials noticed it came from Turkey, a common source of drugs, and was addressed to a post office box, a common destination for narcotics.  As a result, customs officials opened the package

* The Honorable Danny J. Boggs, United States Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

and found 75 sticks of opium, each about six inches long.

When Kamyar Taghizadeh picked up the package, law enforcement officials followed him home. Taghizadeh let them come inside to discuss the package, waived his *Miranda* rights, and consented to a search of his home.

Since the package was addressed to Ken Mondal, Taghizadeh said he was keeping the package for a friend in Germany by that name. In what must have been an awkward moment for Taghizadeh, the agents showed him "Ken Mondal's" driver's license, which had Taghizadeh's photograph and address on it. Taghizadeh then admitted that Ken Mondal was his alias, that he knew the package contained opium, and that he had sold opium in the past.

In searching Taghizadeh's home, the agents found all sorts of things: not only the opium, but also some opium pipes, $16,500 in cash and an Ohaus scale, the kind often used to weigh drugs.

Based on this physical evidence and Taghizadeh's confession, the agents arrested him. He was indicted for "knowingly and intentionally possess[ing] with intent to distribute" and for "knowingly and intentionally import[ing]" approximately 1487 grams of opium.

█ In a pretrial hearing, Taghizadeh moved to suppress all evidence from the search, claiming it violated 19 U.S.C. § 482, which requires customs officials to have "reasonable cause to suspect there is merchandise which was imported contrary to law" before conducting a search. Finding the officials had no reasonable cause to suspect, the district court granted Taghizadeh's motion. As reasonable cause is a mixed question of law and fact, we review de novo. *United States v. Nates,* 831 F.2d 860, 862 (9th Cir. 1987).

## II

█ For a mail search to pass muster under section 482, "customs officials must have reasonable cause to suspect that letters contain contraband or dutiable merchandise before opening them." *United States v. Sandoval–Vargas,* 854 F.2d 1132, 1136 (9th Cir. 1988); *see also DeVries v. Acree,* 565 F.2d 577 (9th Cir.1977). The reasonable cause test is not exacting; it is "considerably milder" than probable cause. *See United States v. Dubrofsky,* 581 F.2d 208, 211 (9th Cir. 1978).[1] Under this test, officials may conduct a search as long as they are aware of "specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the package contains illegal material. In passing on the legality of such a search, we must consider all the surrounding circumstances." *United States v. Most,* 789 F.2d 1411, 1415 (9th Cir.1986) (citations omitted).

█ The district court found that two facts moved customs officials to search the package: First, the parcel came from Turkey; second, it was addressed to a post office box.[2] We conclude that this provided ample basis for customs officials to form a reasonable cause to suspect the presence of contraband. The package's origin in Turkey is extremely significant. In the past, both the Supreme Court and we have placed substantial weight

1. In this circuit, the same standard governs reasonable cause to suspect and reasonable suspicion. *Nates,* 831 F.2d at 863.

2. In a motion for reconsideration, the government raised a third ground: The size of the package, it said, was "sufficiently large to contain narcotics. In fact, this package was larger than most parcels arriving from Turkey. Therefore, it stood out." ER 86. The district court, though, concluded that the ground was "not credible." ER 47. As we do not consider this finding clearly erroneous, we will not disturb it.

We are not convinced, though, by the district court's suggestion that size cannot give rise to reasonable suspicion—that is, that the government's claim regarding size is "factually meaningless since, by definition, every single piece of mail entering the United States has the capacity to contain narcotics." ER 47–48. In fact, the Supreme Court has considered size significant in conducting this inquiry. *See, e.g., United States v. Ramsey,* 431 U.S. 606, 614, 97 S.Ct. 1972, 1978, 52 L.Ed.2d 617 (1977) (finding bulkiness and weight of package, along with fact that it came from Thailand and it "felt like there was something in there," sufficient to establish "reasonable cause to suspect").

on the source country. *See, e.g., United States v. Ramsey,* 431 U.S. 606, 614, 97 S.Ct. 1972, 1978, 52 L.Ed.2d 617 (1977) (relying in part on package's origin in Thailand to find reasonable cause to suspect); *Most,* 789 F.2d at 1416 (package's origin in Thailand helped support finding of reasonable cause to suspect); *cf. Nates,* 831 F.2d at 862 (fact that "bags were destined for Bogata, Colombia" helped support finding of reasonable cause). In *Dubrofsky,* for example, we found reasonable cause because "[s]ubstantial quantities of narcotics are imported into the United States from Thailand, and it is reasonable to suspect that a crated package like the one in controversy contains contraband. Therefore, the package was lawfully opened...." *Dubrofsky,* 581 F.2d at 211; *see also Most,* 789 F.2d at 1415.[3] We see no reason to have a different rule for packages from Turkey, which also is a well-known source country.[4]

If the package comes from a source country, only a little more is needed. Here, we have the fact that Taghizadeh's package was addressed to a post office box. It is true, as the defendant contends, that mail addressed to a post office box is not particularly sinister; in fact, this factor is unlikely to establish reasonable cause by itself. But where suspicions already have been properly awakened, an otherwise innocent fact can intensify them. So it is here. As the government notes, post office boxes are commonly used in drug operations; they are, after all, relatively anonymous and secure. When we pair this fact with the package's origin in a source country, things start looking mighty suspicious. And that's more than the statute requires.

**REVERSED.**

---

**3.** We reject Taghizadeh's argument that *Dubrofsky* construes only the constitutional standard for searching international mail, rather than the statutory one under section 482. *See* Appellee's Brief at 29–30. While the court does not explicitly mention section 482, it uses the statutory test—"reasonable cause to suspect"—and cites to *Ramsey,* which is about section 482. Moreover, the court could not have been talking about constitutional restrictions on border searches, as there are none. *See Ramsey,* 431 U.S. at 619, 97 S.Ct. at 1980.

**4.** Taghizadeh suggests that permitting officials to base reasonable cause on the source country—particularly on a "third world" nation like Turkey—would lead to improper discrimination based on race, ethnicity or national origin. Appellee's Brief at 23.

We reject this contention. By focusing on certain countries known to produce drugs, officials aren't oppressing particular ethnic groups; rather, they're seeking to stanch the flow of drugs. Moreover, we don't see why searching Turkish packages is any more troubling than searching Colombian or Thai mail. *See, e.g., Ramsey,* 431 U.S. at 614, 97 S.Ct. at 1978 (allowing search of mail from Thailand); *Nates,* 831 F.2d at 860 (allowing search of bags going to Colombia); *Most,* 789 F.2d at 1416 (allowing search of mail from Thailand); *Dubrofsky,* 581 F.2d at 211 (same).