42 F.3d 1403
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellant,
v.
Lawrence NELSON, Defendant-Appellee.
 No. 93-10476.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 9, 1994.
Decided Nov. 15, 1994.
 
 Before: NORRIS, THOMPSON and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The United States appeals the district court's order granting Lawrence Nelson's motion to suppress evidence. The government contends the district court erred in holding that federal agents violated Nelson's Fourth Amendment right to be free from an unreasonable seizure when they seized him and obtained his permission to search his car. We have jurisdiction over this interlocutory appeal under 18 U.S.C. Sec. 3731. Because we conclude the agents' seizure of Nelson was a valid Terry stop, see Terry v. Ohio, 392 U.S. 1 (1968), we reverse.
 
 STANDARD OF REVIEW
 
 3
 We review de novo whether there existed reasonable suspicion to conduct a Terry stop. United States v. Taghizadeh, 19 F.3d 1315, 1316 (9th Cir.1994); United States v. Thomas, 863 F.2d 622, 625 (9th Cir.1988). The facts upon which the trial court based its conclusion are upheld unless clearly erroneous. Taghizadeh, 19 F.3d at 1316 n. 2; Guam v. Ichiyasu, 838 F.2d 353, 355 (9th Cir.1988).
 
 DISCUSSION
 
 4
 A law enforcement officer is permitted to seize a person by making an investigatory stop if the officer is aware of specific, articulable facts which form a basis for suspecting the particular person is, or is about to be, engaged in criminal activity. United States v. Cortez, 449 U.S. 411, 416-18 (1981). These facts are to be interpreted in light of a trained officer's experience, and from the practical standpoint of formulating "common-sense conclusions about human behavior." Id. at 418; United States v. Hernandez-Alvarado, 891 F.2d 1414, 1416 (9th Cir.1989). In assessing the lawfulness of the stop, the "totality of the circumstances--the whole picture--must be taken into account." Cortez, 449 U.S. at 417.
 
 
 5
 In Terry, 392 U.S. at 6, an officer with thirty years experience patrolling downtown Cleveland for shoplifters and pickpockets noticed two men standing on a street corner. One of them walked down the street, looked in a store window, continued a short distance, and then walked back to the other man, looking in the same store window before returning to the corner. Id. This behavior was repeated several times by each of the men. Id. The Court stated, "There is nothing unusual in two men standing together on a street corner.... Nor is there anything suspicious about people in such circumstances strolling up and down the street.... Store windows, moreover, are made to be looked in." Id. at 22-23. However, the Court found the men's actions, when viewed in totality, were suspicious, and "it would have been poor police work" for the officer not to investigate. Id. at 23. See also United States v. Sokolow, 470 U.S. 1, 9-10 (1989).
 
 
 6
 In the present case, three employees of Kuleto's, a busy San Francisco restaurant, told Detective Gervacio that Nelson frequently met a lady at the restaurant, regularly used the public telephones in the adjoining hotel lobby before and after these meetings, and during the meetings quickly exchanged envelopes and large packages and then immediately left the restaurant without ordering anything to eat or drink. One of these citizen informants had been known to Detective Gervacio for many years, and Gervacio considered him a reliable person.
 
 
 7
 On the day Detective Gervacio and Agents Foucart and Brugnara seized Nelson, they observed him enter Kuleto's at approximately 5:40 p.m. He carried a white shopping bag. He did not order anything to eat or drink. He spent a few minutes in the restaurant, and then left. He entered the adjoining hotel lobby where he used a public telephone. During his telephone conversation, one of the officers overheard him say "You are a no show ... don't ever embarrass me like that." Nelson then left the hotel lobby, and after browsing through a nearby store proceeded to the parking garage where his car was parked. The officers seized him as he was putting the shopping bag into the trunk of his car.
 
 
 8
 Nelson's behavior at Kuleto's on the day he was seized was not inherently suspect. Such activity could "describe a very large category of innocent" people. Reid v. Georgia, 448 U.S. 438, 441 (1980) (per curiam). See also Brown v. Texas, 443 U.S. 47, 52 (1979).
 
 
 9
 However, the officers had more to go on. From the information provided by the three citizen informants, they knew Nelson's history of repeatedly making quick exchanges of letters or packages in Kuleto's, departing immediately without ordering food or drink, and using a public telephone before and after the exchange. Detective Gervacio testified this was typical drug trafficking behavior. Compare Terry, 392 U.S. at 23 (repeatedly walking to corner and back and looking in same store window when viewed in totality was suspicious to experienced officer and warranted Terry stop). The agents also knew Nelson was a convicted drug trafficker. In sum, the officers were aware of specific, articulable facts which formed a basis for suspecting Nelson was engaging in criminal activity on the day he was seized. See Cortez, 449 U.S. at 416-18.
 
 
 10
 Alabama v. White supports this conclusion. There, the issue was whether there was sufficient independent corroboration of an anonymous tip to justify a Terry stop. White, 496 U.S. at 326-27. The Court held there was, because from what the officers observed before they seized White, they independently corroborated some, but not all, of the information provided by the unknown tipster. Id. at 332.
 
 
 11
 Here, there was a tip from citizen employees of Kuleto's restaurant, one of whom was known to Detective Gervacio. Nelson's behavior, as reported by the employees, was behavior the experienced officers recognized as consistent with drug trafficking. The employees' report of Nelson's previous behavior was also consistent with what the officers observed the day they effected their Terry stop. See White, 496 U.S. at 332 (important the caller was able to predict defendant's future behavior). The only variance from the typical scenario was that Nelson did not exchange a letter or package with anyone on the day he was seized. This variance is explained by Nelson's telephone call when he left Kuleto's. From what he said, it was obvious a meeting had been previously arranged and whoever Nelson was supposed to meet did not show up.
 
 
 12
 Based on the totality of the circumstances, we are satisfied the officers had at least a " 'minimal level of objective justification' " for effecting a Terry stop when they seized Nelson. White, 496 U.S. at 330, quoting Sokolow, 490 U.S. at 7 (1989).
 
 
 13
 REVERSED.
 
 WILLIAM A. NORRIS, Circuit Judge, dissenting:
 
 14
 In Terry v. Ohio, the Supreme Court carved out a narrow exception to the Fourth Amendment in order to accommodate the legitimate needs of police officers to deal with the "rapidly unfolding and often dangerous situations" they confront on the street. 392 U.S. 1, 10 (1968) (resolving the question whether it is "always unreasonable for a policeman to seize a person and subject him to a limited search [without probable cause]") (emphasis added). The Court allowed the police to conduct an investigatory stop in that case because "it would have been poor police work" not to investigate two unknown defendants seemingly casing a store in anticipation of robbing it. Id. at 23.
 
 
 15
 There is no authority that the Terry exception applies when the police have neither any fear of losing a suspect, nor any reasonable belief that a stop--at a particular time and place--would interrupt ongoing criminal activity. In this case, no such risk of losing Nelson existed, and the police had no reasonable expectation that their stop would yield the fruits it did. The officers, together with a deep net of federal and state narcotics investigators, had been tracking the defendant for nearly a decade. They knew his name, address, criminal history, and were familiar with his personal associations. But what they did not know is what Nelson was doing that day at Kuleto's.
 
 
 16
 As the majority states, a "law enforcement officer is permitted to seize a person by making an investigatory stop if the officer is aware of specific, articulable facts which form a basis for suspecting the particular person is, or is about to be, engaged in criminal activity." United States v. Cortez, 449 U.S. 411, 416-18 (1981). Although the requirement of reasonable articulable suspicion does not include an element of exigency, I am aware of no Supreme Court or Ninth Circuit case upholding a Terry stop without either: (1) an unknown suspect; or (2) a known suspect whom the police have been informed is actually committing or about to commit a crime. Compare Alabama v. White, 496 U.S. 325 (1990) (police informed that known suspect was in possession of cocaine); United States v. Alvarez, 899 F.2d 833 (9th Cir.1990) (informant tipped police that a specific person intended to rob a bank); and United States v. Mondello, 927 F.2d 1463, 1471 (9th Cir.1991) (dog "alerted" police that suspect they had been following for six months possessed drugs) with Terry v. Ohio, 392 U.S. 1 (1968) (unknown individuals casing store); United States v. Sokolow, 490 U.S. 1 (1989) (unknown suspect who matches drug courier profile); Guam v. Ichiyasu, 838 F.2d 353, 356 (9th Cir.1988) (unknown person matching description of witness coming from site of hit-and-run accident); United States v. Bautista, 684 F.2d 1286, 1287 (9th Cir.1982) (two unknown individuals matching description of bank robbers).
 
 
 17
 In other words, when the police risk losing an unknown defendant, mere observation of innocent activity that fits some profile of suspected criminal activity may be enough to justify a Terry stop. But when the police know the identity and whereabouts of a suspect they have been keeping tabs on, the police must have some articulable suspicion that the suspect is, at the time the police choose to stop him, engaging in or about to engage in criminal activity.
 
 
 18
 Alabama v. White, 496 U.S. 325 (1990), does not support the majority's decision. In White, the police received an anonymous tip that "Vanessa White would be leaving 235-C Lynwood Terrace Apartments at a particular time in a brown Plymouth station wagon with the right taillight lens broken, that she would be going to Dobey's Motel, and that she would be in possession of about an ounce of cocaine inside a brown attache case." 496 U.S. 325, 327 (1990) (emphasis added). The question for the Supreme Court was whether the police's corroboration of this tip was sufficient to justify a Terry stop.
 
 
 19
 Substantial corroboration of the information contained in an anonymous tip, the Supreme Court held, constituted proof that the tipster had actual knowledge of White's affairs. It was this actual knowledge that lent credibility to the informant's tip that White was actually engaged in drug trafficking. In other words, "reasonable suspicion ... is dependent upon both the content of information possessed by police and its degree of reliability." White, 496 U.S. at 330. Thus, because the police had credible information that White was actually engaged in drug trafficking, they were justified in stopping her at that particular moment.
 
 
 20
 Here, the majority decides that because there was more corroboration in this case than in White, the stop was justified. The majority simply overlooks the requirement that information have meaningful content, as well as a credible source. The tips provided by the three Kuleto's employees, which consisted of mere observations of a repeated pattern of innocent activity, were not based on any personal knowledge of Nelson's involvement in criminal activity. Instead, the "citizen informants" stated only that they observed Nelson in Kuleto's repeatedly engaging in possibly suspicious, though facially innocent activity. The informants did not know, nor did they purport to know anything about the truth that underlay Nelson's innocent--if suspicious--facade. Furthermore, the police's corroborative efforts confirmed only that Nelson would, on occasion, go to a restaurant, meet with individuals seriatim without ordering food or drink, and occasionally use the public telephone. Neither the police, nor the informants had any information to suggest that the "innocent" activity Nelson was engaging in was not, in fact, innocent.
 
 
 21
 By allowing the police to stop Nelson under these circumstances, the majority has effectively expanded the narrow exception established in Terry to deny the protections of the Fourth Amendment to any person with a history of criminal behavior. There is no authority for this broad expansion.
 
 
 22
 I dissent.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3